**In the Matter of Theodore D. WILSON.**

No. 49S00–9308–DI–872.

Supreme Court of Indiana.

Nov. 13, 1996.

Theodore D. Wilson, pro se, and Nathaniel Lee, Indianapolis, for Respondent.

Donald R. Lundberg, Executive Secretary, Charles M. Kidd, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

**DISCIPLINARY ACTION**

PER CURIAM.

The Disciplinary Commission and the respondent have asked this Court to approve their *Statement of Circumstances and Conditional Agreement for Discipline* offered in resolution of this disciplinary action. We approve the tendered agreement, and herein recount the facts and circumstances of this case.

On August 12, 1993, the Commission filed a two-count *Verified Complaint for Disciplinary Action,* therein charging that the respondent, after accepting fees from clients and agreeing to provide representation, had neglected the legal matters entrusted to him. This Court first considered the parties' *Conditional Agreement* after it was submitted for approval in 1994. On September 28, 1994, this Court informed the parties that it was inclined to accept the agreement upon a showing that the respondent had made sufficient restitution of any unearned fees. Issues concerning the respondent's entitlement to the fees have been resolved to the satisfaction of this Court and will be addressed more fully herein.

The respondent was admitted to the practice of law in this state in 1963 and is therefore subject to this Court's disciplinary jurisdiction. Under Count I of the *Verified Complaint,* the parties now agree that in March of 1988, the respondent prepared and signed an agreement for legal services which provided that he would investigate, research, prepare, file, and present a post-conviction relief ("PCR") petition on behalf of a client. In exchange, the client agreed to pay the respondent a retainer of $3,500 upon execution of the agreement and $4,000 upon the conclusion of the PCR hearing. Additionally, the agreement limited the amount of expenses to $3,000. The respondent mailed the signed agreement to the client, who was incarcerated in the Indiana Youth Center.

The client objected to the proposed agreement and suggested that the respondent include any necessary appeals in the agreed fee. By letter dated April 29, 1988, the respondent offered to modify the agreement to include all appeals up to the Indiana Supreme Court for a flat fee of $10,000. The fee was to cover all costs, fees, and expenses save for the cost of a PCR transcript. The client signed the agreement as modified on May 22, 1988.

A "sponsor" of the client paid the respondent $8,000 toward the fee. By letter dated July 6, 1988, the respondent informed the client that, assuming certain evidentiary matters were true, he expected to have him out of prison in 30 to 90 days and that he "hopefully" would file the PCR petition within 45 days. Despite the respondent's contrary assurances, the PCR petition was not filed until March 10, 1989. In a letter dated May 19, 1989, the respondent informed the client that he had encountered problems in filing the PCR petition because he belatedly discovered that the client previously had filed a PCR petition (which was denied) and that he had appealed his conviction to this Court on direct transfer. Some of the respondent's intended arguments, he explained, had been waived by the previous legal proceedings.

At about that time, it became evident that the client was slated to be transferred from the Indiana Youth Center to another Department of Corrections facility. The respondent spent a significant amount of time working with corrections officials in an attempt to prevent that transfer, but was ultimately unsuccessful.

In June 1989, the client directed the respondent to withdraw the PCR petition due to the client's dissatisfaction with the representation. The requested withdrawal was granted by the trial court on June 19, 1989.

The parties agree that, in all, the respondent invested approximately 74 hours working on the client's case, and that the total value of this service, with nominal expenses, was $9,324.75.[1] The evidence indicates that the $8,000 paid by the "sponsor" was the total amount received by the respondent.

We find that by failing to keep his client reasonably informed about the status of a pending legal matter, most notably by failing to accurately advise the client about the status of the contemplated PCR action, the respondent violated Ind.Professional Conduct Rule 1.4(a). By failing to explain the matter to the extent reasonably necessary to permit his client to make informed decisions regarding the representation, the respondent violated Prof.Cond.R. 1.4(b). He violated Prof. Cond.R. 1.3 by failing to act with reasonable diligence and promptness on behalf of his client.[2]

Pursuant to Count II, the parties agree that on May 28, 1985, a client paid the respondent a $300 retainer to handle all legal matters that might arise from a wrongful termination action the client wished to bring against the city of Indianapolis. Later, by verbal agreement, the respondent agreed he would retain 40 percent of any judgment secured from the city. On July 22, 1985, the client paid the respondent an additional $1,000, which the respondent had requested prior to filing an employment discrimination lawsuit against the city. In September of 1985, the respondent represented the client at a hearing before the Indiana Employment Security Division to determine whether the client had been discharged for just cause. Later, the client paid the respondent $250 for attending that hearing. In early November 1985, the respondent filed an employment discrimination lawsuit on behalf of the client in a Marion County trial court. That action was thereafter transferred to Johnson County.

On several occasions between September 1985 and the middle of 1987, the client wrote letters to the respondent in an effort to obtain information about his case. Although the respondent never wrote back, he did speak with his client on several occasions and assured him that the case was progressing.

1. The Commission states that it assigned a rate of $125 per hour for the respondent's time, explaining that the rate was reasonable given the respondent's years of experience, the type of representation involved, and the prevailing fees for similar types of representation during the relevant time period.

2. The *Rules of Professional Conduct* which this Court found the respondent has violated in Count I provide as follow:

Professional Conduct Rule 1.4: (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Professional Conduct Rule 1.3: A lawyer shall act with reasonable diligence and promptness in representing a client.

On July 15, 1987, the respondent informed his client that he had been unable to work on his case over the preceding two years because he had been too busy with the business of other clients. The next day, the client wrote to the presiding judge to request action be taken on the case. On July 21, 1987, the court set a pretrial conference for the case on August 19, 1987. A second pre-trial conference was set for October 28, 1987, but the respondent failed to appear, prompting the court to reset it for November 18, 1987 and to warn the respondent that another absence would risk imposition of legal fees as sanctions.

By letter dated November 4, 1987, the client discharged the respondent and demanded return of the fees already paid. By return letter, the respondent explained that he did not fully understand that the October 28, 1987 pre-trial conference was required and attempted to dissuade the client from discharging him. On November 16, 1987, the respondent filed a motion to withdrawal as counsel in the case. That motion was granted on March 8, 1988.

In all, the client paid the respondent $1,550 for the representation he provided. Based on documents contained in the respondent and the client's records, the Commission and the respondent estimate that the respondent spent approximately 50 hours working on the client's case. The parties thus conclude that the respondent provided services to the client with a value in excess of the $1,550 actually paid.

We find that the respondent failed to keep his client adequately informed about the status of the case and failed to act with reasonable promptness and diligence in representing the client, and therefore that he violated Prof.Cond.R. 1.4(a) and 1.3. By failing to reduce the oral contingent fee agreement to writing, the respondent violated Prof.Cond.R. 1.5(c).[3]

The parties have agreed that a public reprimand is an appropriate sanction for the respondent's misconduct, especially in light of the respondent's free disclosure and general cooperative attitude during these proceedings. This Court has imposed a public reprimand in a case of similar misconduct. *In re Withers*, 619 N.E.2d 923 (Ind.1993) (two counts of neglect of clients' cases).[4] Similarly, the American Bar Association recommends a public reprimand where a lawyer is "negligent or does not act with reasonable diligence in representing a client and causes little or no actual or potential injury to a client." American Bar Association *Standards for Imposing Lawyer Sanctions*, Standard 4.43. Significantly impacting our assessment of an appropriate sanction is the fact that the respondent and the Commission have agreed that he did not retain any unearned fees in either count. In light of these considerations, we are convinced that a public reprimand is reasonably commensurate with the misconduct, but note that the lengthy period of time to which the respondent's inaction attached (over two years in Count II) and the fact that he was privately reprimanded by this Court in 1985 lead us to conclude that the respondent's choice to enter an agreed resolution of this case was a wise one.

Therefore, this Court hereby reprimands and admonishes the respondent, Theodore D. Wilson, for the misconduct that occurred in this case. Costs of this proceeding are assessed against the respondent.

---

**3.** Professional Conduct Rule 1.5(c) provides, in relevant part:

  A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery,

and whether such expenses are to be deducted before or after the contingent fee is calculated.

**4.** In that case, however, we noted that the "harm caused to the clients [and the] prolonged nature of the respondent's derelict conduct call for close scrutiny of his actions." Two Justices dissented, believing that a public reprimand was too lenient. *In re Withers*, 619 N.E.2d at 924.