**In the Matter of Thomas O. CARTMEL.**

**No. 29S00–9509–DI–1065.**

Supreme Court of Indiana.

Feb. 28, 1997.

Thomas O. Cartmel, Carmel, Ronald E. Elberger, Indianapolis, for Respondent.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Attorney, Indianapolis, for The Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

The Disciplinary Commission alleges that the respondent, Thomas O. Cartmel, violated the *Rules of Professional Conduct for Attorneys at Law*. Pursuant to Indiana Admission and Discipline Rule 23, Section 11(c), the parties have now tendered for our approval a *Statement of Circumstances and Conditional Agreement for Discipline*, wherein they agree that the respondent engaged in misconduct and that he should be suspended from the practice of law for sixty (60) days. Having been admitted to this state's bar in 1964, the respondent is subject to our disciplinary jurisdiction.

The Commission's *Verified Complaint* is in three counts. Pursuant to Count II, the parties agree that on May 1, 1994, the respondent's then-legal assistant placed an advertisement in the *Indianapolis Star*. The advertisement read as follows:

### PAST CREDIT PROBLEMS?

Our law firm will have incorrect, obsolete or unverifiable negatives removed from your credit report! Our attitude is this: If you are wanting the cheapest fee in town

... call our "Competitors"! (We don't accept everyone we talk to ... We don't have to!) If you are wanting:

*29 years in practice

*100% results

*Reestablished credit

*The absolute best company to deal with your personal needs. Call us to set up an appointment [ ... ] If we take your case, you'll be among the numerous individuals we've given a second chance to!

Upon learning of the advertisement (after it had been published approximately five times), the respondent promptly canceled it, realizing that its contents were objectionable.

Pursuant to our *Rules of Professional Conduct,* lawyers are responsible for the professional actions of a legal assistant performing legal assistant services at the lawyer's direction and should take reasonable measures to insure that the legal assistant's conduct is consistent with the lawyer's obligations under the *Rules of Professional Conduct.* Ind. Professional Conduct Rule 9.1. *See also* Prof.Cond.R. 5.3. We find that the legal assistant's placement of the advertisement violated Prof.Cond.R. 7.1(b), which provides:

A lawyer shall not, on behalf of himself, his partner or associate or any other lawyer affiliated with him or his firm, use, or participate in the use of, any form of public communication containing a false, fraudulent, misleading, deceptive, self-laudatory or unfair statement or claim.

The advertisement contained misleading, unfair, and self-laudatory language prohibited by the rule.

We also find that the placement of the advertisement violated Prof.Cond.R. 7.1(d)(2) and (4), which provide:

A lawyer shall not, on behalf of himself, his partner or associate, or any other lawyer affiliated with him or his firm, use or participate in the use of any form of public communication which:

...

(2) contains statistical data or other information based on past performance or prediction of future success;

...

(4) contains a statement or opinion as to the quality of the services or contains a representation or implication regarding the quality of legal services[.]

The advertisement contained a prediction of future success and a statement as to the quality of the services offered.

■■ Pursuant to Count I of the *Verified Complaint,* the parties now agree that a client retained the respondent on April 9, 1993, to clear a negative credit history and to assist him in locating a mortgage lender. The respondent told him that his fee for the service was $700 and accepted that amount from the client. On June 30, 1993, the client paid the respondent $50 for a credit history report and $250 for an appraisal. The client implicitly requested that the $300 be retained in trust pending identification of a lender willing to extend the client a mortgage loan, at which time the trust funds were to be expended to obtain the mortgage credit report and appraisal. On July 1, 1993, the respondent deposited the $300 into an account designated as his client trust account. At that time, the account contained funds belonging to the respondent that were not held for the benefit of clients or third persons. On July 6, 1993, the respondent's trust account did not contain a balance sufficient to meet his obligations to the client. Over a course of time, the respondent wrote numerous checks drawn on the account to satisfy personal and unrelated business obligations.

Because the client applied for credit while the respondent challenged various items on the client's credit report, the respondent was unable to delete negative entries from the report. In April 1994, the client requested a refund of the $1,000 he had paid. The respondent refunded $300, plus interest, on January 5, 1996.

We find that the respondent violated Prof. Cond.R. 1.15(a) by failing to hold the property of his client separate from his own property.[1] By converting the client's $300 to his

---

1. Professional Conduct Rule 1.15(a) provides, in relevant part:

own use, the respondent violated Prof. Cond.R. 8.4(b).[2] His conduct involved dishonesty, fraud, deceit and misrepresentation and thus violated Prof.Cond.R. 8.4(c).[3]

■ As to Count III, the parties agree that on May 1, 1993, a client hired the respondent to clear her negative credit history and paid him his quoted fee of $600. During the ensuing year, the client dealt exclusively with one of the respondent's legal assistants, Jeff. Between May 1993 and early 1995, the client periodically spoke with Jeff about the status of her pending credit repair. He informed her several times that he was working to clear her credit history. In early 1995, the client began dealing with the respondent's new legal assistant, Dan, who informed the client that Jeff had done little work on her file. Thereafter, the client contacted Dan once or twice a month regarding the status of her credit. Dan told her that progress was being made and that she should check back with the office soon. On November 16, 1995, the client wrote the respondent and requested that her case be completed. Dan responded to the letter, stating that his review of her credit report revealed that she had successfully applied for credit and that, therefore, the respondent's obligation to her was terminated. The client filed a grievance with the Commission on December 12, 1995, therein expressing her dissatisfaction with the respondent's service. Included in the respondent's response to that grievance was a copy of an agreement signed by the respondent and the client after the client filed her grievance. In the last paragraph of the agreement, the client agreed to withdraw her grievance against the respondent.

By failing to ensure that his nonlawyer staff's conduct was compatible with the respondent's professional obligation to diligently pursue client matters and keep the client accurately informed about the status of her affairs, the respondent violated Prof.Cond.R. 5.3(b).[4] By entering into an agreement with his client which called for dismissal of the grievance she had filed against him, the respondent engaged in conduct that was prejudicial to the administration of justice and thus violative of Prof.Cond.R. 8.4(d).[5]

■ In assessing the adequacy of a sanction, this Court considers the nature of the misconduct, the state of mind of the respondent, any resulting injury or potential injury to the client, the risk of allowing the respondent to continue in law practice, our duty to preserve the integrity of the profession, and matters in mitigation or aggravation. *In re Newman*, 659 N.E.2d 1044 (Ind. 1996). The parties have agreed on several mitigating factors. As to Count II, the parties agree that the respondent's legal assistant placed the offending advertisement without the respondent's prior knowledge or consent. As to Count I, they agree that the client had agreed that he would not apply for credit during the respondent's audit of his credit report, but did so anyway. Although the respondent prepared and issued several challenges in an effort to clear derogatory information from the client's credit report, the client's application for credit during this process ultimately precluded any corrections

---

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person.

**2.** Professional Conduct Rule 8.4(b) provides:

It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]

**3.** Professional Conduct Rule 8.4(c) provides:

It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

**4.** Professional Conduct Rule 5.3(b) provides:

A lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer[.]

The respondent's "professional obligations" imputed to his legal assistants were to act with reasonable diligence and promptness in representing his client and to keep the client reasonably informed about the status of the matter. *See* Prof.Cond.R. 1.3, 1.4(a).

**5.** Professional Conduct Rule 8.4(d) provides:

It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

or revisions to his credit history. It is further agreed that the trust account deficiency lasted less than two days. As to Count III, the parties stipulate that the respondent was unaware that his legal assistant failed to take action on behalf of his client. After learning of the situation, the respondent had others in his office take action to provide the agreed service to the client, eventually causing several negative credit reports to be removed from her credit record.

■ We accord some extenuating weight to the agreed mitigating factors. However, it is clear that the respondent abdicated many of the day-to-day functions of his legal practice to legal assistants without adequately supervising their work product or activities. Lawyers should give legal assistants appropriate instruction and supervision concerning legal aspects of their employment, taking into account the fact that they do not have legal training. *See* Comment to Prof. Cond.R. 5.3. The respondent's failure to take such steps resulted in the publishing of a clearly inappropriate legal advertisement. Also troubling is the respondent's failure to maintain a clear demarcation between his own funds and those of his clients. Our rules unequivocally provide that a lawyer must segregate his property from that of clients or third parties. Finally, the respondent's attempt to induce a client to "withdraw" a grievance against him only aggravates his general course of misconduct.

In light of the above considerations, we are satisfied that a significant period of suspension adequately comports with the respondent's misconduct. Accordingly, we approve the agreed sanction.

It is, therefore, ordered that the respondent be suspended from the practice of law for a period of sixty (60) days, beginning April 4, 1997, at the conclusion of which he shall be automatically reinstated to the practice of law, subject to the conditions of Admis.Disc.R. 23(4)(c).

Costs of this proceeding are assessed against the respondent.