FOR THE RESPONDENT FOR THE SUPREME COURT      DISCIPLINARY COMMISSION

Nathaniel Lee 
 
 Donald R. Lundberg, ExecutiveSecretary

Nathaniel Lee & Associates 
115 West Washington Street, Suite 1060

Market Square Center, Suite 2025
 Indianapolis, IN 46204 

151 North Delaware Street 

Indianapolis, IN 46204

 
 

IN THE

SUPREME COURT OF INDIANA

IN THE MATTER OF  )

  )  Case No. 49S00-9707-DI-408

THEODORE D. WILSON  )

________________________________________________________________

DISCIPLINARY ACTION

________________________________________________________________

April 12, 1999

Per Curiam

The respondent, Theodore D. Wilson, is an attorney accused of professional misconduct arising from his representation of an Indianapolis couple in a personal injury lawsuit. We find the respondent guilty of that misconduct and suspend him from the practice of law for eighteen months.

 This proceeding began in 1997 with the filing of a
 Verified Complaint for Disciplinary
 
Action
 by the Indiana Supreme Court Disciplinary Commission as contemplated under Ind.Admission and Discipline Rule 23(12).  The case was tried before a hearing officer, who found that the respondent engaged in the charged misconduct.  The respondent petitioned this Court to review the hearing officer’s report.  Under these circumstances, we examine the record
 de novo
, but give the hearing officer’s findings emphasis due to his unique opportunity for direct observation of witnesses.  Final determination must be made by this Court.  
Matter of Brooks
, 694 N.E.2d 724 (Ind. 1998).  We note preliminarily that the respondent was admitted to the Bar of this state in 1963 and is therefore subject to this Court’s disciplinary jurisdiction.

The following facts are not in dispute.  An Indianapolis couple retained the respondent to represent them in a personal injury lawsuit arising from an automobile accident.  The respondent failed to prepare a written contingency fee agreement for approval and signature by the couple.  However, the respondent and the couple agreed at the outset that the respondent would receive one-third (1/3) of any recovery and that any expenses of the litigation would be paid from the respondent’s portion of the recovery.

The respondent negotiated a settlement with State Farm Insurance, the company which insured the driver who caused the accident.  State Farm agreed to pay the couple its policy limits of $50,000.  As a condition of that settlement, the couple signed a release of liability that had been reviewed and approved by the respondent.  State Farm issued a settlement draft in the amount of $50,000, which the respondent deposited into his escrow account on December 16, 1994. 

Within one week of depositing the $50,000, the respondent withdrew $16,000 from the escrow account in two checks payable to the respondent.  Thus, as of December 22, 1994, the respondent had received all but $666.67 of the agreed one-third (1/3) contingent fee from the settlement with State Farm.    

The couple requested $7,500 from the settlement to pay surgical expenses.  On December 21, 1994, the respondent issued a check in the amount of $7,500 payable to the wife.  On January 27, 1995, the respondent issued a check payable to “Larry Greenburg” from the escrow account.  Although at hearing the respondent claimed that check was a settlement payment relating to a case denominated 
Greenburg v. Brewster
 pending in a federal court in Maryland, the respondent failed to provide any credible evidence to support that assertion.  On March 3, 1995, the respondent withdrew $6,000 from the escrow account in a check payable to himself.  
Two months later, the respondent paid $6,200.64 from the escrow account to the Marion County Treasurer for the payment of real estate taxes for the years 1993 and 1994 on three parcels of real estate which he owned.
 

Between July 1995 and October 1996, the respondent issued checks from the escrow account in the amount of: 1) $4,280 payable to “Attorney Jan (illegible)” for “Legal fees”; 
2) $2,835 and $4,050 payable to the respondent for “Attorney fees” and “Attorneys Expenses”, respectively; 3) $452.13 payable to Chrysler Corporation to pay his personal car payment for October; 4) $50
 payable to “Center for Leadership Development” for “Awards Banquet” -- a personal charitable contribution; 
5) $50 payable to the 25th Street Baptist Church for “65th Anniversary Souvenir Book”; and 6) $500 payable to the “Fairfield Industrial H.S. Scholarship Fund” -- another personal charitable donation.  During that period, the balance in the respondent’s escrow account was not sufficient to pay to the couple the proceeds of their settlement with State Farm.

The couple authorized the respondent to pursue a claim against their own insurance company, Shelter Insurance Companies, under the under-insurance provisions of their policy.  
On March 20, 1995, the respondent filed suit on behalf of the couple against Shelter and their insurance agent.  Shelter filed its answer and a motion for summary judgment claiming that the release of the State Farm claim constituted a release of all claims by the couple, including the claims asserted in their suit against Shelter and their insurance agent.  

Thereafter, the respondent contacted another Indianapolis attorney to assist him.  The respondent claims the other attorney was representing him, while the Commission argued that the other attorney was assisting the respondent in representing the couple.  The respondent issued three checks from the escrow account totaling $2,500 payable to the other attorney in June and July 1995. 

In August 1995, the respondent for the first time presented a written fee agreement to the couple with respect to their case against the other driver, although that case had been settled in December 1994.  The respondent told the couple that he would place a date on the agreement.  The agreement is dated August 27, 1993 -- the approximate date the respondent began representing the couple -- although the agreement was actually executed two years later.

On November 14, 1995, the Marion Superior Court entered summary judgment against the couple with respect to their claim against Shelter and their insurance agent.  The respondent and the other attorney met with the couple and told them that their case had been lost.  The day after that meeting, the respondent gave the couple a check for $10,000 payable from the escrow account.  The respondent also told them that he would provide an accounting for the proceeds from their settlement with State Farm.  The respondent never gave the couple a written statement of the outcome of the State Farm case or the Shelter case and never gave the couple a written statement showing the remittance to the couple and the method of its determination.

On June 13, 1996, the couple filed suit against the respondent.  On November 6, 1996, the couple signed a “Settlement Agreement and Release” wherein they agreed to settle their claims against the respondent for $40,000.  That settlement contained the following language:

Plaintiffs have agreed to withdraw allegations of misconduct against Theodore Wilson which 

they have filed with the Indiana Disciplinary Commission.

On November 7, 1996, the wife sent a letter to the Disciplinary Commission requesting that her grievance against Theodore Wilson be withdrawn and dismissed.  On November 19, 1996, the respondent sent a letter to the Commission stating:

Responding to the referenced grievance (which is basically a

fee dispute matter), I now advise that the dispute has been

resolved. [The wife] has been given a complete copy of the

file, and it is my understanding that her allegation of

misconduct has been retracted and withdrawn.

The respondent, in fact, never gave the wife a complete copy of the file.

We have reviewed the hearing officer’s findings of misconduct and agree with them.  Thus, we find, as the hearing officer did, that the respondent violated Ind.Professional Conduct Rule 1.5(c) by failing to reduce his contingent fee agreement to writing.
(footnote: 1)  In so ruling, we reject the respondent’s claim that the intent of that rule was satisfied here because the couple was aware of the terms of the contingent fee agreement.  The requirement that the contingent fee be reduced to writing is designed to protect both the lawyer and the client from any later misunderstanding; thus, the client’s knowledge of the terms of the verbal fee arrangement is irrelevant for determining whether Prof.Cond.R. 1.5(c) has been violated.  We further note that this case is a vivid reminder of the need for a written contingent fee agreement, inasmuch as the parties subsequently disagreed as to the terms of the verbal agreement into which they had entered (specifically, the expenses for which each would be liable).  

We further find that respondent violated Prof.Cond.R. 1.5(c) by failing to provide a written statement to the couple indicating the outcome of the representation, the remittance to the couple, and the method by which that remittance was calculated.  
The respondent claims he did not have a duty to make an accounting for the settlement proceeds after November 6, 1998, when the couple settled their claims against the respondent.  Alternatively, the respondent argues he did provide such an accounting at a mediation session on November 4, 1996.  The respondent provides no factual or evidentiary support for this argument apart from his statement that “(I)t is only reasonable to assume that the (couple) and their attorneys received a satisfactory accounting of the settlement proceeds at the mediation in order to determine what sum represented a fair settlement.”

The respondent’s settlement of the couple’s claims against him could not, and did not, abrogate his professional duty under Prof.Cond.R. 1.5(c) to detail the outcome of the lawsuit, the terms of the settlement, and the method by which the division of the settlement was accomplished.  The respondent’s claim that he provided such an accounting at the mediation is unsupported by the evidence.

We further find that the respondent violated Prof.Cond.R. 8.4(c) by misappropriating escrow funds for personal use.
(footnote: 2)  He failed over a lengthy period to maintain a balance in the escrow account sufficient to pay his obligation to the couple.  The respondent claims that his actions were the product of sloppy recordkeeping and that the couple was never deprived of their funds.  While it is true that the couple’s initial requests for payment were fulfilled, the couple eventually had to file a lawsuit to recover the remainder of the funds due them.  Writing checks on an escrow account for personal expenses, including a car payment and charitable contributions, strongly suggests fraudulent intent, rather than sloppy recordkeeping.

We also find that the respondent violated Prof.Cond.R. 8.4(d) by inserting a term into a later settlement agreement with the couple which required the wife to withdraw her grievance filed with the Disciplinary Commission.
(footnote: 3)  The respondent argues no prejudice occurred because the settlement provision did not change the result -- the Commission proceeded with the charges in spite of the wife’s attempt to withdraw her grievance.  Moreover, the respondent suggests that the wife may have withdrawn her complaint for reasons other than the settlement, although such an argument, by the respondent’s own admission, is not supported by the evidence.  In any event, the record is clear the respondent attempted to induce the wife to withdraw her grievance.  His actions violated the Rules of Professional Conduct.

In 
Matter of Cartmel
, 676 N.E.2d 1047 (Ind. 1997), the respondent attorney responded to a client’s grievance by providing to the Commission a private settlement agreement which required the client to withdraw her grievance.  We found that such conduct was prejudicial to the administration of justice and violated Prof.Cond.R. 8.4(d).  
See
 
also
 
Matter of
 
Blackwelder
, 615 N.E.2d 106, 108 (Ind. 1993) (“By procuring a promise not to file a disciplinary grievance, the respondent attempted to obstruct the disciplinary process and engaged in conduct prejudicial to the administration of justice, in violation of Prof.Cond.R. 8.4(d).”)  The fact that the Commission proceeded with the charges does not reduce the prejudice caused by the respondent’s actions in procuring a withdrawal of the grievance.  The grievance process is designed to protect the public by ensuring that misconduct is detected and punished.
(footnote: 4)  Any efforts to interfere with the revelation of such misconduct necessarily impinges that process.

           As we have found professional misconduct, we must determine an appropriate disciplinary sanction.  We examine several factors, including the respondent’s state of mind, the duty violated, actual or potential injury to the client, the duty of this Court to preserve the integrity of the profession, the risk to the public, and mitigating and aggravating circumstances.  
Matter of
 
Brooks
, 
supra
.  Prior disciplinary offenses, a pattern of misconduct, and multiple offenses are among those aggravating factors which may justify an increase in the degree of discipline to be imposed.  
ABA Model Standards for Imposing Lawyer Sanctions
, Standard 9.2(a), (c), and (d).

The respondent has practiced law in Indiana for more than thirty-five (35) years.  He has been twice reprimanded by this Court during that period.  
Matter of Wilson
, Case Number 184-S-29 (private reprimand in 1985 for accepting a loan from a client); 
 
Matter of Wilson
, 672 N.E.2d 931 (Ind. 1996) (
public reprimand for neglect and failure to reduce a contingent fee agreement to writing). The ink was barely dry on disciplinary charges accusing him of failing to reduce a contingency fee agreement to writing in 1993 when he undertook to represent the couple in this case.  Yet, while those charges initiated in 1993 were pending, the respondent nevertheless proceeded to ignore Prof.Cond.R. 1.5(c) and committed the same misconduct again in this case.  That failure invited a host of difficulties for him and his clients, not the least of which is this proceeding.  Instead of taking responsibility for his actions, the respondent invented a number of apparition scapegoats and has shown a willingness to engage in conduct designed to hide his misdeeds.  For instance, the respondent made vague references to unidentified people who failed to make unspecified deposits into his escrow account but whom he never confronted about such omissions.  The evidence suggests the respondent also created a fictitious Maryland litigant to whom a settlement check was written but for whom no evidence of a deposit exists and whose litigation was never documented in this proceeding.
  He also concocted a bogus contingency fee agreement long after the couple’s case had been settled.  
He sums up his misconduct as the product of sloppy bookkeeping and  “declining skills . . . attributable to advanced age.”  The record, however, persuades us that there was intent to defraud.  Counsel for the respondent filed an impressive brief in the representation of his client. Nevertheless, the respondent’s disciplinary history and the gravity of the misconduct proven in this case lead us to conclude that the respondent should be suspended from the practice of law. 

Accordingly, this Court orders that the respondent, Theodore D. Wilson, be suspended from the practice of law for not less than eighteen (18) months, beginning May 17, 1999.  At the conclusion of that period, he may petition this Court for readmission to the Bar of this State, provided he can satisfy the conditions set forth in Admis.Disc.R. 23.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the Clerk of the United States Court of Appeals for the Seventh Circuit, the Clerk of each of the United States District Courts in this state, and the Clerk of each of the United States Bankruptcy Courts in this state with the last known address of the respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.

FOOTNOTES
1:
Prof.Cond.R. 1.5© provides in relevant part:

A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.  Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

2: Prof.Cond.R. 8.4(c) provides:

It is professional misconduct for a lawyer to: 

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

3:
Prof.Cond.R. 8.4(d) provides:

It is professional misconduct for a lawyer to: 

(d) engage in conduct that is prejudicial to the administration of justice;

4:

The respondent argues generally that the hearing officer improperly admitted evidence presented by or obtained from the other attorney.  The respondent claims the other attorney represented him, and, therefore, the attorney-client privilege prohibited the admission of that evidence.  The respondent does not specify the challenge evidence or specify to which finding of misconduct the allegedly inadmissible evidence relates.  Accordingly, we find that the respondent has waived this argument.