## In the Matter of John W. BROOKS.

### No. 49S00–9506–DI–679.

Supreme Court of Indiana.

May 7, 1998.

---

1. Ind.Code §§ 6–7–3–1 to –17 (Supp.1992).

2. Ind.Code § 35–48–4–1 (1988 & Supp.1990).

Nathaniel Lee; Lee & Clark, Indianapolis, for Respondent.

Robert C. Shook, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

The Indiana Supreme Court Disciplinary Commission charged John W. Brooks, a member of the Bar of the State of Indiana, with two counts of professional misconduct. In Count I, the Commission alleged that the respondent handled client settlement funds improperly. In Count II, the Commission alleged that the respondent neglected a legal matter. This case was tried before a hearing officer who submitted her findings of fact and conclusion that the respondent engaged in the charged misconduct.

The respondent petitioned for review, challenging the findings and conclusions as erroneous and not supported by clear and convincing evidence. The issues raised by the respondent will be addressed within the disciplinary review process which involves a

*de novo* examination of the entire record tendered in the case. The hearing officer's findings receive emphasis due to the unique opportunity for direct observation of witnesses, but this Court reserves the right to make the ultimate determination. *Matter of Smith,* 572 N.E.2d 1280 (Ind.1991); *Matter of Kern,* 555 N.E.2d 479 (Ind.1990); *Matter of Hampton,* 533 N.E.2d 122 (Ind.1989). As a preliminary matter, we note that the respondent was admitted to the Bar of this Court in 1975 and is subject to this Court's disciplinary jurisdiction.

**Count I.** In February of 1991, the respondent settled a personal injury case on behalf of two clients, a husband and wife. Although the wife did not participate very much in the settlement negotiations, she insisted on controlling her settlement proceeds, fearing that her husband would not use the funds wisely. On February 21, 1991, the clients accompanied the respondent to a bank where they negotiated a settlement check of $13,500 and took their proceeds in cash. In addition to the appropriate attorney fees, the respondent retained $1,500 from each of the client's settlement proceeds, for a total of $3,000, for the purpose of paying two physicians who had treated the clients for their injuries. On the same date, the respondent deposited the retained funds in his trust account. On March 29, 1991, the respondent paid $1,000 on behalf of each of the clients as payment in full to one of the treating physicians, for a total of $2,000.

Shortly thereafter, the clients started receiving demands from the second physician for payment of his unpaid bills. This prompted the husband to file a grievance with the Supreme Court Disciplinary Commission complaining that the respondent had failed to pay all of the doctor's bills. On August 1, 1992, some 17 months after he had withheld funds and after the client had filed a grievance, the respondent paid the outstanding bill of $100 to the second physician. The respondent failed to refund to the wife the $400 balance of the $1,500 retained from her proceeds and failed to provide her with an accounting.

On eight occasions between the time of the deposit and the payment of the first $2,000 to the first doctor, the respondent's account fell below the $3,000 that he should have held on behalf of these clients. After the payment of the first bills and until the last payment, the respondent's account on twenty-one occasions fell below the balance equal to the remaining entrusted funds. Further, on March 24, 1991, while the balance in the account should have been no less than $3,000 but was not, the respondent wrote a check for $100 on the trust fund in satisfaction of a personal expense. Also, on three subsequent occasions, the respondent wrote checks on his trust account for the satisfaction of other personal expenses.

The respondent contends that he disbursed all of the $3,000 retained from his clients shortly after February 21, 1991 as follows:

| | |
|---|---|
| Cash given to first doctor at bank on 2/21/91 | $ 600 |
| Payment to second doctor for husband on 4/2/91 | $1,000 |
| Payment to second doctor for wife on 4/2/91 | $1,000 |
| Cash given to the husband on 4/21/91 | $ 400 |

The respondent claims that the $600 in cash listed above was paid to the second doctor on the same date he and his clients negotiated the settlement check. The physician in a deposition testifies that he was paid $600 in cash. Brooks also contends that the payment he made to this physician some seventeen months later was made from respondent's own funds.

The hearing officer was not convinced by the respondent's contentions and made extensive findings as to why she was not persuaded. Among those findings was the fact that the second doctor's records did not reflect a receipt of $600 and no such credit was applied to the client's account. The hearing officer also found that the $600 would have been an overpayment, but the physician never refunded any amount to the respondent's clients. She found that neither the doctor nor the respondent could explain why the doctor was overpaid. Further, she found that the doctor did not mention the cash payment to the Disciplinary Commission until the day of his deposition.

The hearing officer also found unpersuasive the respondent's claim that he paid $400 in cash to the husband some nineteen days after retaining the money. The respondent claimed that the $400 in cash was paid to the husband via a check issued to and cashed by

a paralegal working in his office. The husband had passed away in July of 1994. The hearing officer found the paralegal not to be a credible witness and enumerated a host of facts which rendered the witness's testimony inconsistent. The hearing officer noted that even if the respondent's claim regarding the $400 cash payment was accepted as the truth, for the sake of argument, the respondent nonetheless failed in his duties toward the wife because he failed to account to her and to follow her specific instructions regarding control of her settlement funds.

■ Although this is a *de novo* examination of the entire record, the hearing officer's assessment of the witnesses and her judgment in reconciling conflicting evidence carry great weight. *Matter of Smith*, 572 N.E.2d at 1285; *Matter of Kern*, 555 N.E.2d at 482. Here, the hearing officer weighed the evidence presented by the Commission against the respondent's claims to the contrary and concluded that the respondent had retained the clients' funds improperly for some seventeen months. Upon examination of all matters tendered in this case, we find that there is ample evidence to support the hearing officer's findings and her conclusion that the Commission proved the alleged misconduct by clear and convincing evidence. Accordingly, we conclude that the respondent failed to act with reasonable diligence in transmitting the withheld funds to the appropriate recipients, in violation of Prof.Cond.R. 1.3.[1] He did not hold the client's property separate from his own and failed to promptly deliver to his clients or third parties, property to which the third parties were entitled to receive, in violation of Prof.Cond.R. 1.15(a) and 1.15(b).[2] By this conduct, the respondent committed conversion and engaged in conduct involving dishonesty, fraud, deceit

and misrepresentation, in violation of Prof. Cond.R. 8.4(b) and 8.4(c).[3]

**Count II.** In July of 1993, the respondent was retained to transfer twenty shares of General Motors stock from a deceased husband's name to the name of the surviving spouse and a surviving daughter. He received $300 for this service. The surviving spouse was not sophisticated in business matters and the respondent's contacts and dealings regarding this matter were with the daughter. For a period of time, this client's file was handled by another attorney in respondent's office, but it was eventually transferred back to the respondent.

Although the surviving spouse believed that her daughter took two stock certificates to the respondent, none were ever found in the file. The associate assigned to the case prepared and had the surviving spouse sign documents which were forwarded to the transfer agent for General Motors. However, the transfer agent, First Chicago Trust Company of New York, returned paperwork submitted by the respondent's associate as incomplete and explained that, in order for the parties to transfer the stock, the client had to obtain a Medallion Signature Guarantee on the "Stock Power" (one of the required forms). A Medallion Signature Guarantee could only be obtained from a bank or other financial institution participating in a Medallion program approved by the Securities Transfer Association, Inc. The respondent's associate sent the necessary stock power to the daughter to take to her mother and to the bank in order to obtain the necessary bank Medallion guarantee. The daughter died in May of 1995 without completing this task. The respondent did not learn immediately of the daughter's death, but when

1. Prof.Cond.R. 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client.

2. Prof.Cond. 1.15(a) provides, among other things, that a lawyer shall hold property of clients or third persons separate from the lawyer's own property; Prof.Cond.R. 1.15(b) provides that, upon receiving funds or other property in which the client or third person has an interest, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to

receive, and upon request, shall provide a full accounting regarding such property.

3. Prof.Cond.R. 8.4(b) provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer. Prof.Cond.R. 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

he did so, he made no attempt to contact the surviving spouse or to pursue further the transfer of stock. He did not account for or refund the fee and did not complete the transfer.

It is the respondent's contention that his only client was the daughter and that her delay in cooperating with his instructions and eventual death discharged any obligation he may have had in the matter. Further, he states that the $300 fee was based on his initial impression that a stock certificate was available and the transfer would require only three hours of work. In fact, he contends, the fee was woefully inadequate to compensate him and his associate for the number of hours they actually spent working on this matter. The respondent further explains that he did not contact the client after he learned of the daughter's death because the client had filed a grievance against the respondent.

■ The fact that the respondent dealt with the daughter regarding this matter does not render the surviving spouse any less a client. The respondent was hired to represent the surviving spouse's interest. The surviving spouse signed papers upon the advice and guidance of the respondent's associate. Upon learning of the death of the daughter, the respondent had a duty to contact the surviving client and, at a minimum, apprise her of the status of the representation and the fact that the next step in the process depended on her. In light of the foregoing, we conclude that the respondent failed to keep his client reasonably informed about the status of the matter, in violation of Prof.Cond.R. 1.4(a).[4]

■ Having concluded that the respondent engaged in misconduct, we now must determine an appropriate disciplinary sanction. In doing so, we examine several factors. Among them are the respondent's state of mind, the duty violated, actual or potential injury to the client, the duty of this Court to preserve the integrity of the profession, the risk to the public, and mitigating and aggravating circumstances. *Matter of Cox,* 662 N.E.2d 635 (Ind.1996); *Matter of Conway,* 658 N.E.2d 592 (Ind.1995); *Matter of Ragland,* 647 N.E.2d 319 (Ind.1995). Prior disciplinary offenses, a pattern of misconduct, and multiple offenses are among those aggravating factors which may justify an increase in the degree of discipline to be imposed. *ABA Model Standards for Imposing Lawyer Sanctions,* Standard 9.2(a), (c), and (d). We note that the respondent has twice before been disciplined by this Court for neglecting clients' matters.[5] In this instance, the respondent crossed the line between mere lack of diligence in disbursing the client's settlement funds into the far more egregious conduct of improper handling of clients' funds. Well recognized principles of client fund management require that lawyers treat client or third party money that comes into their custody with care of a professional fiduciary. *Matter of Kinkead,* 661 N.E.2d 823 (Ind.1996). The respondent reduced the balance in his trust account to insufficient levels and used some of the funds for the payment of personal expenses. Few other acts of misconduct impugn the integrity of the Bar or place the public more at risk than the mishandling of clients' funds. *Matter of Newman,* 659 N.E.2d 1044, (Ind.1996). The misconduct exhibited in this instance, coupled with respondent's prior discipline, leads us to conclude that a period of suspension from the practice of law is warranted.[6] A suspension for nine (9) months without automatic reinstatement adequately addresses the seriousness and the repetitive nature of the misconduct but also provides the respondent an opportunity, in not too distant a future, to

---

4. Prof.Cond.R. 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter.

5. *Matter of Brooks,* 437 N.E.2d 47 (Ind.1982). The respondent was suspended for 90 days for four counts of neglect of clients' cases. *Matter of Brooks,* Case No. 485 S 14 (Ind.1990). This Court imposed a private reprimand for the respondent's failing to file a timely motion to correct error.

6. Standard 4.12 of the *ABA Model Standards for Imposing Lawyer Sanctions* provides that suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

prove to this Court that he can again be entrusted with the interests of others.

It is, therefore, ordered that John W. Brooks is hereby suspended from the practice of law for a period of nine (9) months, beginning June 7, 1998. At the conclusion of this period of suspension, the respondent may petition this Court for reinstatement pursuant to Admission and Discipline Rule 23, Section 4.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the Clerk of the United States Court of Appeals for the Seventh Circuit, the Clerk of each of the Federal District Courts in this state, and the Clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.