**In the Matter of Michael A. RAGLAND.**

**No. 49S00–9608–DI–565.**

Supreme Court of Indiana.

July 1, 1998.

Order Postponing Effective Date of Suspension July 24, 1998.

Ronald E. Elberger, Bose McKinney and Evans, Indianapolis, for Respondent.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Attorney, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

### PER CURIAM.

Attorney Michael A. Ragland failed to adequately communicate with several clients, failed to appropriately represent their interests, and mismanaged funds he held on their behalf in violation of the *Rules of Professional Conduct for Attorneys at Law*. For that misconduct, we conclude today that he should be suspended from the practice of law in this state for at least six months.

This case formally began with the Disciplinary Commission's *Verified Complaint for Disciplinary Action*, filed on August 21, 1996.[1] Pursuant to Ind.Admission and Discipline Rule 23, Section 11, the Commission and the respondent now agree that the respondent engaged in misconduct as charged and that a suspension from the practice of law is appropriate discipline for the misconduct. The opinion that follows more fully sets forth the facts and circumstances of this case and our reasoning in deciding to accept the parties' agreed resolution. As a preliminary matter, we note that the respondent's admission to the bar of this state in 1987 confers with us disciplinary jurisdiction in this matter.

 Under Count I of the *Verified Complaint*, the parties agree that three former employees of a large department store chain filed *pro se* employment discrimination suits in federal court in late 1990. On May 1, 1991, after a consultation with the respondent, one of the plaintiffs paid the respondent a $1,500 retainer to handle her case. Thereafter, the respondent entered an appearance on behalf of all three plaintiffs. Although the respondent later represented the plaintiffs at a deposition and obtained two extensions of time to respond to the defendant's motion for summary judgment, he ultimately failed to formally reply to that motion. While the motion for summary judgment pended, the respondent reached a settlement with the defendant's attorney by which the plaintiffs would move to dismiss the action if the defendant agreed to drop potential claims for costs and attorney fees. The respondent informed the court and the plaintiffs of the proposed settlement. The plaintiffs informed the respondent that they wished instead to pursue their claim. On October 21, 1992, the court entered an order directing the plaintiffs to file a pleading authorizing dismissal. Counsel for defendant reminded the respondent of their agreed settlement by letter dated November 12, 1992, and urged the respondent to file the dismissal papers as directed by the federal court. The respondent then moved for an extension of time to file the papers, which the court granted over the defendant's objection, giving the respondent until December 21, 1992. The court stated that if the proper authorization was not filed by that time, the plaintiffs' cases would be dismissed with prejudice. That date, the respondent filed a motion to withdraw as counsel, stating therein that there had been a "material breakdown" in the attorney/client relationship and that the plaintiff refused to adhere to advice he gave her. On December 23, 1992, the court provisionally granted his motion to withdraw provided he comply with local rule which required, *inter alia,* evidence of written notice to the client. The respondent never informed his clients that he sought withdrawal. The defendant moved for dismissal with prejudice on December 22, 1992, which the court granted on December 31, 1992, based on the respondent's failure to prosecute the action. Thereafter, the respondent convinced the plaintiffs that their cases were still pending. They did not learn of the dismissal until

---

1. The Commission amended that complaint on August 20, 1997.

April 9, 1994, when they contacted the court directly. The respondent never returned his clients' file to them.

Indiana Professional Conduct Rule 1.2(a) requires lawyers to abide by the decisions of clients concerning the objectives of representation and to abide by clients' decisions to accept an offer of settlement of a matter. By accepting the defendant's settlement offer contrary to his clients' wishes, the respondent violated Ind.Professional Conduct Rule 1.2(a). Professional Conduct Rule 1.3 requires lawyers to act with reasonable diligence and promptness in representing clients. By failing to prosecute his clients' actions, the respondent violated the rule. Professional Conduct Rule 1.4(b) requires that lawyers explain matters to the extent reasonably necessary to permit clients to make informed decisions regarding representations. The respondent failed to provide such explanation to his clients and thus violated the rule. Professional Conduct Rule 1.16(d) requires that lawyers take steps to the extent reasonably practicable to protect clients' interests upon termination of representation, including giving reasonable notice to the client of withdrawal from representation. The respondent violated that provision by moving the court for withdrawal with no notice to the client and on the day settlement authorization was due. Professional Conduct Rule 1.5(c) requires lawyers to memorialize in writing contingency fees with clients. The respondent failed to do so and thus violated the rule.

Under Count II, we now find that in late 1994, the respondent entered an appearance as co-counsel on behalf of a client charged with felony drug trafficking. Trial was scheduled for April 10, 1995. On March 6, 1995, this court issued an order suspending the respondent from the practice of law for thirty days, beginning April 6, 1995. *Matter of Ragland,* 647 N.E.2d 319 (Ind.1995). The respondent failed to inform his client or co-counsel of his suspension and he did not appear at trial on April 10. About ten minutes before trial was to begin, another attorney entered her appearance for the client for the sole purpose of making an oral motion for a continuance based on the respondent's suspension. The judge denied the motion and trial proceeded with only co-counsel representing the client, who was ultimately found guilty and convicted. On May 18, 1995, the respondent appeared with the client at sentencing. The client informed the court that the respondent would handle an appeal of the conviction and sentence. The respondent initiated an appeal by filing a record of proceedings with the Court of Appeals on August 23, 1995. Over the next several months, he filed five motions for extension of time to file a brief. On February 2, 1996, the Court of Appeals granted the respondent's fifth request, giving him until February 15, 1996, but noting that it was the "absolute final extension." The respondent failed to file the brief, prompting the court to dismiss the appeal on March 26, 1996.

By failing to explain to his client that he had been suspended from the practice of law prior to the day of trial so that his client could make an informed decision on how to proceed with his case, the respondent violated Prof.Cond.R. 1.4(b). By that omission, he also failed to keep his client reasonably informed as to the status of the pending legal action, as required by Prof.Cond.R. 1.4(a). By failing to file an appellate brief despite having been granted five extensions of time to do so, the respondent violated Prof. Cond.R. 1.3.

As to Count III, the parties agree that in 1991, a resident of a nursing home died from injuries she sustained while residing there. Her daughter hired the respondent to file suit against the nursing home and the medical laboratory that took x-rays of her mother's injuries. An estate for the mother was opened in late 1991 for the purpose of filing a wrongful death suit, with the daughter appointed personal representative. The respondent filed suit against the nursing home and the medical laboratory in April 1993, seeking reimbursement for $71,000 of medical bills and final expenses incurred by the mother. Prior to March 9, 1994, the respondent informed the daughter that the insurer for the defendants offered to settle for $18,000. In light of the $71,000 in medical and final expenses, the daughter did not authorize that settlement. However, on March 9, 1994, the personal representative, at the respondent's invitation, met with him at his office. He presented her with two checks dated February 10, 1994, and togeth-

er totaling $18,000 and made payable to her, the respondent, and Indiana Medicaid. She endorsed both checks after the respondent told her that the insurance carrier would "take care" of a Medicaid/Medicare subrogation lien of over $53,000. The respondent provided the personal representative with a settlement statement showing remittance of the proceeds. It provided that $53,494.69 was to be paid on the Medicare/Medicaid subrogation liens, and that $18,000 of the proceeds remained "after Medicare Subrogation." Relying on the respondent's representation that the Medicaid subrogation lien would not be part of the settlement, the personal representative executed a settlement and indemnity agreement on March 4, 1994, which provided that she would discharge all liens and indemnify the nursing home and medical lab and their insurer against all liens.

In July of 1995, the personal representative received a court order to appear and show cause why she should not be held in contempt for failing to properly administer the estate. The respondent did not advise her that the hearing was an evidentiary hearing, nor did he inform her that she was entitled to an administrator's fee and reimbursement of expenses incurred in her handling of the estate. On November 2, 1995, the court entered its order pursuant to the hearing, directing the estate to pay Medicare $6,500. Thereafter, the personal representative hired successor counsel, who filed a motion for reconsideration of the order approving the wrongful death settlement. In ruling on that motion, the court found that the respondent failed to properly advise the personal representative of the terms of the settlement. The court amended its earlier order to reduce the amount of fees the respondent received and giving the personal representative her administration fee.

By accepting the $18,000 offer of settlement without his client's authorization, the respondent violated Prof.Cond.R. 1.2(a). By failing to keep his client advised of her continuing duties as personal representative of the estate, the respondent violated Prof. Cond.R. 1.4(a). By failing to explain to his client the impact of executing the settlement and indemnity agreement, the respondent violated Prof.Cond.R. 1.4(b). Professional

Conduct Rule 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. By telling his client that the Medicare subrogation lien would not have to be paid out of the settlement proceeds when that statement was false, the respondent violated the rule.

 As to Count IV, the parties agree that in August 1995, a Michigan court issued a bench warrant for the arrest of a man due to his failure to make child support payments. On January 9, 1996, he hired the respondent to represent him in the matter and clear up the child support issues. He paid the respondent a $500 retainer. He later paid the respondent an additional $600 to work on issues relating to the client's dissolution. At about that time, the respondent promised his client that on January 24, 1996, he would appear at a hearing concerning the warrant. The client appeared in court that day only to find that the respondent was absent. Later that day, the client called the respondent, who informed him that he had hired local counsel to handle the case and that he (the respondent) had called the local prosecutor's office to "take care" of the warrant. In fact, the warrant was still active at that time. The client fired the respondent on March 7, 1996. The client later learned that the respondent never hired local counsel and that he never filed any pleadings with the Michigan court.

The respondent's lack of diligent or prompt action on behalf of his client violated Prof.Cond.R. 1.3. By failing to keep his client adequately informed about the status of the representation or the status of the outstanding warrant, the respondent violated Prof.Cond.R. 1.4. By making false statements about the warrant (for example, by claiming that the warrant had been "taken care of"), the respondent violated Prof. Cond.R. 8.4(c) by making a fraudulent and deceitful claim. By failing to refund to his client the unearned portion of the retainer fee he had paid, the respondent violated Prof. Cond.R. 1.16(d).

 As to Count V, the parties agree that a client hired the respondent in February 1992 to pursue a personal injury claim after agreeing to a contingency fee arrange-

ment which provided the respondent with 33% of any gross recovery prior to trial. On April 1, 1992, the client signed an "Authorization of Payment of Physician Fees" authorizing the respondent to pay out of any recovery the bill for chiropractic charges the client incurred. On February 17, 1993, the respondent settled the case for $15,000. He prepared a settlement statement which provided that the respondent would receive $5,000 as his fee; that he would retain $90 as reimbursement for advanced expense costs; that the client would receive $6,506; and that $3,404 was to be retained in the respondent's trust account for payment of medical expenses. Specifically, the settlement agreement provided for $2,910 to go to the chiropractor, $132 to a certain radiologist, and $362 to a certain hospital. On February 18, 1993, the respondent deposited a settlement check for $15,000 in his attorney escrow account. The respondent then proceeded to write a check to his client for $6,506. By May 11, 1993, the escrow account's balance had fallen to $128.46, despite the fact that the respondent had paid none of his client's medical bills as he had agreed to do. On May 14, 1997, some four years after depositing the settlement proceeds and after his client filed a grievance with the Commission, the respondent delivered $2,910 to the chiropractor. In his later response to the Commission's request for investigation, the respondent untruthfully stated that he retained an amount ($3,404) in his escrow account sufficient to pay his client's medical obligations.

By using his client's funds for purposes not related to the client or the client's obligations, the respondent committed a criminal act that reflected adversely on his honesty, trustworthiness, and fitness as a lawyer in violation of Prof.Cond.R. 8.4(b). By failing to promptly notify this client that he had received funds on his behalf and by failing to promptly deliver those funds to the client, the respondent violated Prof.Cond.R. 1.15(b). Professional Conduct Rule 8.1(a) provides that a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter. By telling the Commission that the balance in his escrow account had remained at a level sufficient to discharge his client's obligations to third parties when that statement was false, the respondent violated the rule.

In assessing the adequacy of the agreed sanction, we examine several factors, including the nature of the misconduct, any threat posed by the respondent to the public or the profession, and matters in aggravation or mitigation. Most striking in this regard is the fact of the respondent's chemical and alcohol dependency and depression at the time of the misconduct. Since then, the parties submit that the respondent has successfully completed a formal detoxification program, obtained medical treatment for his depression, and now regularly meets with a psychiatrist. He states that he has remained substance free since early 1997. Additionally, the parties stipulate that the respondent refunded unearned fees to his clients and paid outstanding obligations owed to third-party creditors. In aggravation, we note again that the respondent was disciplined in 1995. *Matter of Ragland,* 647 N.E.2d 319 (30 day suspension for failing to abide by his client's decisions concerning settlement).

It is clear that the respondent has employed measures to cope with his psychological and substance abuse problems. We are inclined to believe, as the Commission and the respondent imply, that his mental and emotional state greatly contributed to his professional misconduct and that, accordingly, once he controls those problems he will again be fit to practice law. We also note, however, that his misconduct was in no way trivial or *de minimis*. He subjected his clients to great inconvenience, anxiety, and peril. His misconduct spanned a long period of time, affected numerous clients, and contained very troubling elements of deceit and misrepresentation. Although we recognize that personal problems may have contributed to his misconduct, we still view his actions as quite severe and deserving of lengthy suspension. We further conclude that his history of substance abuse will require careful monitoring in the event he is reinstated following suspension.

It is, therefore, ordered that the respondent, Michael A. Ragland, is suspended from the practice of law for a period of not less than six (6) months, beginning August 7, 1998. Any future readmission to the practice of law for the respondent will not be automatic at the end of that period. Instead, should he seek reinstatement, he must for-

mally petition this Court and demonstrate satisfaction of the requirements of Ind.Admission and Discipline Rule 23(4), (18), and (26)(b). Should he be reinstated, the respondent shall be subject to a one (1) year period of probation beginning on the date of his reinstatement. During that period, the respondent must:

1. Remain free from the use of alcohol or other intoxicating or addicting substances, or other drugs not prescribed for medically therapeutic purposes;

2. continue in the monitoring or aftercare program in which he is participating at the time of execution of his *Conditional Agreement;*

3. maintain a professional relationship with his treating psychiatrists as specified in the *Conditional Agreement;*

4. participate at least three times weekly in meetings of Alcoholics Anonymous or other appropriate twelve-step program specifically authorized and approved by the executive secretary of the Disciplinary Commission, and shall submit a written monthly report to his recovery monitor in which he verifies under oath his compliance with this provision or sets forth under oath any instances of failure to comply with this provision and a detailed explanation therefor. The respondent shall submit to his monitor the name of an individual who can personally vouch for his attendance at the meetings described above, or, alternatively, submit written proof of meeting attendance acknowledged by the initials of another individual in attendance at the meeting;

5. attend at least one meeting per week of the Justice Society, the Caduceus Group or other equivalent support group specifically authorized and approved by the executive secretary. The respondent shall submit a written monthly report to his monitor in which he certifies under oath his compliance with the provisions or sets forth, under oath, any instances of failure to comply with this provision and a detailed explanation therefor. The respondent shall supply to his monitor the name of an individual who can personally vouch for his attendance at the meetings described above;

6. cause progress reports to be generated by his treating physician/addictionologist/psychologist at six month intervals after reinstatement. For purposes of calculating the due date of each report, a report shall be due no later than each six month anniversary of the date of reinstatement;

7. include in the aforementioned at least (a) the date on which the report was prepared; (b) the date(s) and locations on which respondent was seen/interviewed/evaluated by the author of the report; and (c) a description of the progress of the respondent's treatment and prognosis and any recommended changes in the respondent's treatment or aftercare program. Items in the report shall be detailed and, where appropriate, make specific reference to the events/facts in the respondent's life;

8. consent to the release to the Disciplinary Commission of any and all chemical dependency treatment records created before or during the period of probation. This consent will be revoked at the conclusion of the respondent's term of probation;

9. waive all assertions of confidentiality or privilege associated with his treating health care providers as they relate to his treatment for alcoholism, chemical dependency, mental illness and related substance abuse illnesses. This consent shall be revoked at the conclusion of the term of this probation;

10. waive all assertions of confidentiality or privilege associated with records maintained by his employer about the respondent's employment. If self-employed, the respondent agrees promptly to provide the Disciplinary Commission with copies of requested records, including financial records, upon reasonable request and otherwise to cooperate with such requests made by the executive secretary of the Disciplinary Commission and the respondent's monitor;

11. not violate the *Rules of Professional Conduct* during the period of his probation;

12. immediately report to the Disciplinary Commission any failure to comply with any of the terms of this order of probation in writing and specifically identify the type and circumstances of this failure of compliance.

The clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals

for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the clerk.

Costs of this proceeding are assessed against respondent.

## ORDER POSTPONING EFFECTIVE DATE OF SUSPENSION

By Order issued July 1, 1998, this Court ordered the suspension from the practice of law of the respondent, Michael A. Ragland, for a period of not less than six months, effective August 7, 1998. *Matter of Ragland,* 697 N.E.2d 44 (Ind.1998). The respondent has now asked that this Court temporarily stay the effective date of his suspension in order to allow him to appear at five previously-scheduled hearings on behalf of clients. The respondent further requests an extension of time to comply with the notice and affidavit provisions of Ind.Admission and Discipline Rule 23(26)(c).

And this Court, being duly advised, now finds that, in the interests of the orderly administration of justice and to avoid substantial hardship to the clients whose hearing have already been scheduled, the respondent's request should be granted.

IT IS, THEREFORE, ORDERED that the effective date of Michael A. Ragland's suspension from the practice of law in this state shall be extended to September 7, 1998.

IT IS FURTHER ORDERED that the respondent is granted an extension of time, to and including September 7, 1998, during which to file the affidavit required by Admis.Disc.R. 23(26)(c). In all other respects, this Court's July 1, 1998, order of suspension shall remain in full force and effect.

All Justices concur.