In the Matter of Ronald Lynn **DAVIS.**

No. 10S00–9802–DI–106.

Supreme Court of Indiana.

Sept. 2, 1999.

Ronald Lynn Davis, pro se.

Donald R. Lundberg, Executive Secretary, Charles M. Kidd, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM

The respondent, Ronald Lynn Davis, misappropriated $1,000 which he had promised his client that he would pay to her chiropractor. For such professional misconduct, we suspend him from the practice of law in this state for a period of six months.[1]

This disciplinary proceeding began with the filing of a *Verified Complaint for Disciplinary Action* by the Supreme Court Disciplinary Commission on February 23, 1998, pursuant to Ind.Admission and Discipline Rule 23(12). This Court appointed a hearing officer pursuant to Admis.Disc.R. 23(11)(b). After an evidentiary hearing on October 16, 1998, the hearing officer determined the respondent engaged in the charged misconduct and submitted to this Court findings of fact and conclusions of law. Where, as here, the hearing officer's findings

---

1. By virtue of his admission to the practice of law in Indiana in 1976, the respondent is subject to the disciplinary authority of this Court.

and recommendation are not challenged, we accept and adopt the findings but reserve final judgment as to misconduct and sanction. *Matter of Grimm,* 674 N.E.2d 551 (Ind.1996).

We now find that the respondent represented the client in a personal injury claim arising from a 1992 automobile accident. The respondent and the client entered into a contingent fee agreement under which the respondent would receive a fee of 33-1/3 percent of any recovery obtained as a result of the respondent's representation of the client. Thereafter, the respondent determined any reasonable settlement likely would be insufficient to pay the client's medical bills arising from the accident, the attorney fees, and damages for her suffering. Therefore, the respondent negotiated with the client's chiropractor to reduce the chiropractor's charges from $1,750 to $1000. Also, the respondent agreed to reduce his fee for legal services to $500.

With the assistance of a mediator, the personal injury claim was settled on March 30, 1995, for $3,200. The respondent reviewed the settlement with his client and prepared the following checks: $1,520 payable to the client; $1,000 payable to the chiropractor; $180 payable to the mediator; and $500 payable to the respondent for attorney fees.

In July 1995, the client learned that her chiropractor had not been paid. For the next eight months, the client and the chiropractor's office attempted to contact the respondent on numerous occasions to inquire about payment to the chiropractor. The respondent spoke to the client only once during that period.

■ On April 19, 1996, the respondent sent the chiropractor a $1,000 check payable from the respondent's escrow account. Between March 1995, when the settlement proceeds were obtained, and April 19, 1996, when the chiropractor was paid from those proceeds, the respondent did not hold the $1,000 in trust for the client at all times. In fact, the respondent's escrow account was repeatedly overdrawn during that period. The respondent admitted he withdrew from the escrow account the funds intended for the chiropractor's fee and used those funds for his personal benefit.

Based on the foregoing facts, we find that: 1) the respondent violated Ind. Professional Conduct Rule 1.15(b) by failing to promptly deliver funds which he was holding for his client, and 2) the respondent violated Prof. Cond.R. 8.4(c) by engaging in conduct involving fraud and dishonesty when he used his client's funds for his own benefit.[2]

■ Now that we have found misconduct, we must determine an appropriate sanction. Neither party argues for a specific sanction, although the Commission contends that misappropriation of client funds requires some period of suspension. In assessing a sanction, we examine the nature of the misconduct, the duty violated, the state of mind of the respondent, the actual or potential injury caused by the respondent, the potential risk to the public in allowing the respondent to continue in practice, the duty of this Court to preserve the integrity of the profession, and factors in aggravation and mitigation. *Matter of Lucas,* 672 N.E.2d 934 (Ind. 1996).

■ Mishandling client funds is a serious offense. Few other acts of misconduct impugn the integrity of the Bar or place the public more at risk than the mishandling of clients' funds. *Matter of Brooks,* 694 N.E.2d 724 (Ind.1998). Well recognized principles of client fund management require that lawyers treat client or third party funds that come into their custody with the care of a professional fiduciary. *Id.* The respondent failed in that duty, inasmuch as he overdrew his trust

---

2. Prof.Cond.R. 1.15(b) provides:

Upon receiving funds or other property in which the client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Prof.Cond.R. 8.4 provides in relevant part:

It is professional misconduct for a lawyer to:
. . .
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

account on several occasions and used the funds at issue here for personal expenses. When the client and the chiropractor's office repeatedly attempted to contact the respondent to inquire why payment was not forthcoming, the respondent on all but one occasion failed to respond. He did not tender a check to the chiropractor until 13 months after receiving the settlement proceeds and, instead, during that time used the money for his own benefit. Such misconduct warrants a period of suspension from the practice of law. *See, e.g., Matter of Brooks, supra* (nine-month suspension for failing to keep client funds in trust and failing to keep clients reasonably informed where attorney had been disciplined twice previously); *Matter of Ragland,* 697 N.E.2d 44 (Ind.1998) (six-month suspension for trust account mismanagement and failure to adequately communicate with clients).

Accordingly, we hereby suspend the respondent for six months, beginning October 4, 1999, at the conclusion of which the respondent shall be automatically readmitted to the practice of law in this state.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the Clerk of the United States Court of Appeals for the Seventh Circuit, the Clerk of each of the United States District Courts in this state, and the Clerk of each of the United States Bankruptcy Courts in this state with the last known address of the respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.