In the Matter of Edgar A. GRIMM.

No. 17S00–9307–DI–722.

Supreme Court of Indiana.

Dec. 18, 1996.

Edgar A. Grimm, Auburn, for Respondent.

Wendell L. Ham, Jr. Bluffton, IN.

Donald R. Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

The Disciplinary Commission charged the respondent, Edgar A. Grimm, with violations of the *Rules of Professional Conduct for Attorneys at Law* arising from allegations that he maintained a sexual relationship with a client during that client's divorce proceedings. A hearing officer appointed by this Court pursuant to Ind.Admission and Discipline Rule 23, Section (11)(b) heard evidence and concluded that the respondent engaged in misconduct as charged. This matter is now before us for final resolution.

■ Neither the respondent nor the Disciplinary Commission has petitioned this Court for review of the hearing officer's report. Where the hearing officer's report is unchallenged, we accept and adopt the findings contained therein but reserve final judgment as to misconduct and sanction. *In re Kristoff,* 611 N.E.2d 116 (1993).

The respondent was admitted to this state's bar in 1959. We now find that in May of 1987, a client (the "client") retained the respondent to represent her in the dissolution of her marriage. The respondent and the client agreed that she would pay him $75 per hour for legal services and reimburse him for any reasonable cost advances he made on her behalf. At the outset, the respondent told her that he did not believe that his legal fees and expenses for the contemplated dissolution would exceed $2,500.

The respondent filed a dissolution action in Allen Circuit Court; it was later venued to Noble Circuit Court. Thereafter, the client received from the respondent several written invoices for legal services rendered. The first arrived in July 1987, and she received additional invoices monthly until December, 1987. As of December 10, 1987, the respondent's bill for legal services and expenses amounted to $2,028.18, of which the client had paid $1,045. After the December 10, 1987 invoice, the client received no others in connection with the dissolution.

During the ensuing months while the dissolution and post-dissolution matters pended, the client confided various personal matters to the respondent. For example, she informed him that she had been a victim in her marriage of both physical and emotional abuse, as a result of which she experienced depression, low self-esteem, and suicidal thoughts. Beginning in late 1987, the respondent began to bestow a good deal of attention on the client. He telephoned her frequently, invited her to lunch, and complimented her on her attractiveness. His attentions continued to grow, and by January 1988 he began to take interest in her children, her social activities, and other personal matters.

On Valentine's Day, 1988, the respondent visited the client at her home and gave her flowers and candy. They drank wine together, held hands, and kissed. Approximately one or two weeks later, the respondent again visited the client's home, and they engaged in sexual activity.

At some time during February 1988, the client asked the respondent why she had not received any invoices for legal services since December 10, 1987. He informed her that he was "taking care" of the legal bills for the time being and that there was "nothing for [her] to worry about," or words to similar effect. Two months later, when the client again asked about invoices, the respondent made similar assurances. Sexual relations continued between the respondent and the client until at least August 1988. During the course of this intimate relationship, the respondent gave the client various gifts, including cash and a Mexican 50 pesos gold coin attached to a gold necklace.

Trial of the dissolution occurred on February 23, February 24, March 8, April 13, and April 26, 1988. Many issues were involved, including matters of child custody, child support, child visitation, ownership of certain real estate and real property and a substantial amount of personal property, the nature and value of the husband's business, dissipation of marital assets by the husband, and allocation of the parties' obligations. The respondent knew that the marriage had produced a child, then six years old, and that the client had custody of the child during the dissolution.

Around August of 1988, the client told the respondent that she no longer felt "right" about their relationship and that it was neither healthy nor appropriate. She then terminated their personal relationship, although the respondent's professional representation of her continued.[1] The Noble Circuit Court entered findings and judgment in the dissolution on September 30, 1988.

On November 29, 1988, the respondent filed a "Notice of Intention to File and Hold

---

1. Soon after the respondent's personal relationship with the client ended, the respondent began to pursue the affections of the client's sister, a former client. His personal relationship with the client's sister continued through the early months of 1989.

Attorney Lien" (the "notice") against the client without having sent or presented invoices for legal services to the client since December 10, 1987. The notice indicated that the respondent sought $12,718.18 in attorney fees and targeted certain real estate that had been set off to the client in the dissolution for satisfaction of his claim. The respondent did not provide her with notice of the filing. On January 10, 1989, the respondent filed a certified copy of the notice in the office of the recorder in DeKalb County. On July 21, 1989, he filed a complaint to enforce the lien. The DeKalb Circuit Court entered a default judgment in favor of the respondent on November 22, 1989, but set aside the award on January 25, 1990 due to an error. The court set hearing of the matter so that the respondent could establish the amount of fees and expenses he claimed the client owed to him.

Trial was held on January 29, 30, and 31, 1992. The respondent testified under oath in support of the amount he claimed the client owed to him. He further testified that he had not had sexual relations with the client and that he had never given her gifts. On October 16, 1992, the DeKalb Circuit Court entered findings and judgment, therein ordering the client to pay to the respondent $9,916.94 plus prejudgment interest for services rendered in the dissolution, but found that he was not entitled to costs in the form of additional attorney fees pursuant to I.C. 34–1–32–1. On November 20, 1992, the client paid the respondent, prompting the respondent to release the money judgment while preserving his right to appeal on other issues. In his appeal to the Indiana Court of Appeals, the respondent contended, *inter alia,* that the trial court erroneously heard evidence about the personal relationship that he had had with the client.[2] The Court of

Appeals ultimately stated that such allegations "were relevant to an inquiry on the amount of damages ..." and affirmed the trial court.

In his response to the Commission's notice of grievance, the respondent referred to the client as an "unmitigated liar," and, in denying the allegations in her grievance, characterized them as "nothing more than the raving of a lazy, promiscuous, greedy, psychotic bitch."

The hearing officer concluded that the respondent's sexual involvement with his client violated Ind.Professional Conduct Rules 1.7(b), which provides in relevant part:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation.

The hearing officer also found that by assuring his client that she need not worry about paying attorney fees after the invoice of December 10, 1987, and by assuring her that the fees would be "taken care of," the respondent violated Prof.Cond.R. 1.4[3] and 8.4(c).[4] The hearing officer also found that the respondent violated Prof.Cond.R. 1.4(a) and 1.7(b) by failing to inform the client of escalating charges for legal services which far exceeded his initial projections and by failing to notify the client of his filing of the notice. The hearing officer concluded further that the respondent violated Prof. Cond.R. 8.1(a) by falsely informing the Commission that he had not had sexual relations with the client during the course of their

---

**2.** However, in the October 16, 1992 findings and conclusions, the trial court found that "any personal relationship between the parties was not intended as payment of, or in exchange for attorney's fees," and that the issue of their personal relationship did not bear on the client's liability for attorney fees.

**3.** Professional Conduct Rule 1.4 provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and

promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**4.** Professional Conduct Rule 8.4(c) provides:

It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

professional relationship.[5] By falsely testifying under oath to that effect and by falsely testifying that he never gave the client gifts, the hearing officer found that the respondent violated Prof.Cond.R. 8.4(b), 8.4(c), and 8.4(d).[6]

■ The respondent's sexual relationship with his client during the pendency of dissolution and post-dissolution matters materially limited his representation of her in those matters. Specifically, the hearing officer found that the respondent ceased informing the client of the status of her attorney fees account during the period of their personal involvement, thus depriving her of notice that his legal bill was growing beyond his initial communicated estimation. Ultimately, their failed personal relationship resulted in time-consuming and costly litigation over the nature and value of the services he had provided. We therefore find that the respondent violated Prof.Cond.R. 1.7(b) by representing a client when that representation was materially limited by his own interests.

The respondent's failure to inform the client of the escalating legal bill after December 10, 1987 and his failure to provide notice to her of his filing of the notice violated Prof.Cond.R. 1.4(a) in that he failed to keep her adequately informed about the status of her case or promptly respond to her repeated requests for information regarding her legal bill. He also reassured the client that the legal bills would be "taken care of," but later failed to live up to this understanding. Although the Commission has not charged the respondent with charging an unreasonable fee, we note that, after having promised to contain the legal bills, the respondent's subsequent submission of a bill for over $12,000 was an unreasonable charge in violation of Prof.Cond.R. 1.5(a). He violated also Prof.Cond.R. 8.1(a) by informing the Commission that he had never had sexual relations with the client. By making the same claim to the DeKalb Circuit Court, and by falsely informing that court that he had never given the client gifts, the respondent violated Prof.Cond.R. 8.4(b), 8.4(c), and 8.4(d).

■ Having found that the respondent engaged in professional misconduct, we must now determine an appropriate discipline. A lawyer's professional relationship with a client is fiduciary in nature, and requires the lawyer to act with the utmost good faith. *Sanders v. Townsend*, 582 N.E.2d 355, 358 (Ind.1991). *See also Hafter v. Farkas*, 498 F.2d 587, 589 (2d Cir.1974) (fiduciary obligations require lawyers to act with good faith, honesty, integrity, fairness, and trust in dealings with clients). In their professional capacity, lawyers are expected to provide emotionally detached, objective analysis of legal problems and issues for clients who may be embroiled in sensitive or difficult matters. Clients, especially those who are troubled or emotionally fragile, often place a great deal of trust in the lawyer and rely heavily on his or her agreement to provide professional assistance. Unfortunately, the lawyer's position of trust may provide opportunity to manipulate the client for the lawyer's sexual benefit. Where a lawyer permits or encourages a sexual relationship to form with a client, that trust is betrayed and the stage is set for continued unfair exploitation of the lawyer's fiduciary position. Additionally, the lawyer's ability to represent effectively the client may be impaired. Objective detachment, essential for clear and reasoned analysis of issues and independent professional judgment, may be lost. *See generally* American Bar Association Formal Opinion No. 92–364, *Sexual Relations with Clients*.

It is clear that the respondent's ability to attend objectively to the financial aspects of his professional relationship with the client

---

**5.** Professional Conduct Rule 8.1(a) provides:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not knowingly make a false statement of material fact[.]

**6.** Professional Conduct Rule 8.4(b) provides:

It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]

Professional Conduct Rule 8.4(d) provides:

It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice[.]

was destroyed by his intimate involvement with her. As a result, she was forced to litigate the issue of fees owed and placed in an openly adversarial position with former trusted counsel. The respondent's apparent continued emotional involvement after termination of the personal relationship caused him purposely to mislead the Commission and to provide deceptive testimony to a tribunal. It is perhaps somewhat extenuating that there is no evidence of harm to the respondent's ability to litigate effectively the substantive issues of dissolution. We do note, however, that he should have been aware that his relationship could have negatively impacted issues of child custody. The respondent's intimate involvement with his client ultimately damaged his professional objectivity, poisoned their professional relationship, and led him to other professional misconduct.

In light of the foregoing, we are convinced that the respondent should be suspended from the practice of law for a period of one year. It is, therefore, ordered that the respondent, Edgar A. Grimm, be suspended from the practice of law for a period of not less than one year, beginning January 24, 1997, at the conclusion of which he may petition this Court for reinstatement pursuant to the provisions of Admis.Disc.R. 23(4).

Costs of this proceeding are assessed against the respondent.