**In the Matter of James E. CHOVANEC.**

**No. 35S00–9603–DI–229.**

Supreme Court of Indiana.

May 27, 1998.

Kevin P. McGoff, Kiefer and McGoff, Indianapolis, for Respondent.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Attorney, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

### DISCIPLINARY ACTION

PER CURIAM.

The respondent in this case, James E. Chovanec, neglected the legal matters of several clients and mishandled client funds. For that misconduct, we conclude that he should be suspended from the practice of law for no less than one year.

On December 31, 1996, the Disciplinary Commission filed a four-count *Amended Verified Complaint for Disciplinary Action* alleging that the respondent violated the *Rules of Professional Conduct for Attorneys at Law*. The Commission and the respondent now agree that the respondent engaged in misconduct.

Pursuant to the parties' agreement, we now find that, under Count I, a client hired the respondent on May 4, 1989, to file a personal injury action, which the respondent did on November 21, 1989. Thereafter, the respondent failed to prosecute the case, re-

sulting in it being scheduled for a dismissal hearing on April 4, 1994, pursuant to Trial Rule 41(E). On March 11, 1994, the respondent filed a "motion to reinstate" the case, which was granted that day. On July 8, 1994, the court again ordered a T.R. 41(E) hearing, directing the respondent to show cause on July 14, 1994, why the case should not be dismissed. The hearing was later continued until October 27, 1994. When the respondent failed to appear at that hearing, the case was dismissed. The trial court granted the respondent's second motion to reinstate, filed on November 4, 1994. Between 1989 and 1994, the client received no communication initiated by the respondent about the action other than a letter dated January 25, 1990. On November 29, 1994, the client by letter informed the respondent of his displeasure over the service provided and requested return of his file. On March 11, 1996, the respondent returned case file materials to which the client was entitled.

By failing to take significant action on behalf of his client, the respondent violated Ind.Professional Conduct Rule 1.3, which requires lawyers to act with reasonable diligence and promptness in representing clients. By failing to keep his client apprised of the status of his case for a period of four years, the respondent violated Prof.Cond.R. 1.4(a), which requires lawyers to keep their clients reasonably informed about the status of their legal matters and to promptly comply with reasonable requests for information. By failing to return to his client case file materials to which the client was entitled upon termination of the representation, the respondent violated Prof.Cond.R. 1.16(d), which requires lawyers to take reasonable steps to protect their clients' interests upon termination of representation.

Pursuant to Count II, we now find that the respondent accepted a $3,000 retainer on June 21, 1994, to undertake an appeal of a court order modifying custody. Although the respondent filed an appearance and a praecipe for preparation of the record of proceedings on June 30, 1994, he failed to file the appeal within Ind.Appellate Rule 3(B)'s 90–day period. His subsequent motion to file a late record was denied, and the Court

of Appeals dismissed the appeal on November 7, 1994. The respondent failed to inform his client of the dismissal until the client confronted him.

We find that the respondent, by his actions under Count II, violated Prof.Cond.R. 1.3 and 1.4(a).

Under Count III, we now find that a client hired the respondent in June 1992 to pursue a personal injury claim on his behalf and agreed to pay the respondent ¼ of any pre-trial settlement. The respondent filed a complaint for damages on May 11, 1994. On October 25, 1994, he settled the case for the defendant's insurance contract maximum of $25,000. That day, the defendant's insurer issued a settlement check jointly payable to the client and the respondent. At a meeting in the respondent's office, the clients endorsed the settlement check for the respondent to negotiate. He informed his clients that day that his fee was $5,694.98. From the remaining settlement funds, he retained $7,913.35 to pay two subrogation liens, and $2,649 to pay certain medical providers. Beginning the day of his meeting with his clients and for approximately the next two years, the following transactions occurred relative to the settlement proceeds the respondent held in trust:

11/4/94: $133 payble to James E. Chovanec to reimburse expenses

11/4/94: $5,694.98 to James E. Chovanec for partial attorney fees

11/16/94: $7,000.00 to James E.Chovanec for attorney fees

11/21/94: $8,609.67 to clients for their portion of settlement

12/23/94: $788.00 to James E. Chovanec for subrogation fee

12/30/94: $2,500.00 to James E.Chovanec

1/18/95: $2,362.00 to Statesman Insurance Co. for subrogation claim

2/27/95: $2,185.02 to Steelworkers Health + Welfare Fund for subrogation claim

2/27/95: $531.00 to medical provider

7/29/96: $2,118.00 to client for refund of medical expenses

The respondent's total fee, including his "subrogation fee," amounted to $15,982.98, or

almost 64 percent of the total recovery, even though he agreed to retain only 25 percent. He settled the subrogation claims for a total of $4,547.02, or $3,366.33 less than he retained for that purpose. Of the $2,649 he retained in trust to pay medical providers, he ultimately paid only $531 in satisfaction of such claims. Some two years after placing the funds in trust, and five months after paying the medical provider, he refunded the excess $2,118.00 he had retained for medical expenses to his clients.[1] At least two times during the period before he refunded the last of the retained medical lien funds to his client, the balance in the trust account fell below an amount sufficient to cover the total obligation. On July 8, 1996, the respondent deposited $5,654.00 into the account. He later told the Commission that he maintained sufficient funds in the account to cover the amounts initially earmarked for third-party medical provider when that statement was not true.

■ By failing to promptly notify his client that he held excess funds in his possession after satisfaction of the medical subrogation liens, and by failing to promptly deliver those funds to them, the respondent violated Prof.Cond.R. 1.15(b), which requires lawyers to promptly deliver funds to third parties upon receiving such funds. The respondent made a false statement of material fact to the Commission by stating that he held sufficient funds to cover all anticipated medical expenses when in fact that was not true, and thus violated Prof.Cond.R. 8.1(a) which precludes lawyers from making false statement of material facts in connection with disciplinary matters. By allowing his trust balance to fall below an amount necessary to pay all obligations relative to the settlement, the respondent committed a criminal act, conversion, which reflects adversely on his fitness to practice law, in violation of Prof.Cond.R. 8.4(b). In that such conduct involved dishonesty, fraud, deceit, and misrepresentation, the respondent violated Prof.Cond.R. 8.4(c).

By retaining $15,928 of the settlement, or almost 64 percent of the total recovery after agreeing to retain only 25 percent, the respondent violated Prof.Cond.R. 1.5(a) by collecting an unreasonable fee. A troubling aspect of that violation was his apparent failure to disclose to the client his retention of the additional $788 subrogation fee. A lawyer may violate the *Rules of Professional Conduct* for failing to disclose the retention of the additional fee. *Matter of Lehman*, 690 N.E.2d 696 (Ind.1997).[2]

Pursuant to Count IV, we now find that in early August of 1993, a client retained the respondent to obtain worker's compensation benefits for her after she was injured at her workplace. The respondent explained to his new client that he would be paid a contingent fee based upon the percentage allowed by the worker's compensation statutes. He contacted the client's employer on September 2, 1993, and requested that it notify its worker's compensation carrier of the claim. On November 8, 1993, the carrier extended a lump sum settlement offer of $2,000, based on physician's observations and information the client had provided. The respondent and his client discussed the offer later that month, after which the client requested an opportunity to consider the offer and the advice the respondent provided. Thereafter, the client was unable to schedule an appointment with the respondent or have him return her telephone messages. The respondent failed to appear at three scheduled meetings with his client. On March 17, 1994, the employer's insurance carrier wrote to the respondent requesting a response to the settlement offer. On May 9, 1996, the carrier contacted the client to inform her that the respondent never replied and that it had therefore withdrawn its settlement offer.

We find that the respondent's actions in Count IV violated Prof.Cond.R. 1.3 and 1.4(a).

---

1. Total funds drawn on the $25,000 settlement amount to $31,921.67. Part of the discrepancy can be explained by a $5,654 deposit made by the respondent on July 8, 1996. In any event, the agreed facts illustrate the extent of the respondent's trust fund mismanagement.

2. In addition, we recently held that attorney fees paid by insurers out of their subrogation recoveries enure to the insured, and not the insured's lawyer, absent an otherwise permissible agreement setting forth an alternative arrangement. *Lehman, supra.*

■ The parties agree that the appropriate discipline for the misconduct in this case is suspension from the practice of law for a period of no less than 12 months, with the requirement that the respondent petition this Court in the event he seeks reinstatement. In support, they point to several factors purporting to mitigate the severity of his misconduct. As to the allegations of delay of his client's case in Count I, the respondent states that he was unable to serve on the defendant the complaint and summons. In relation to his failure to timely file an appeal in Count II, the respondent states that the court reporter did not provide to him a transcript before the appellate filing period elapsed. As to Count IV, in which we found that the respondent failed to follow up on an insurer's $2,000 settlement offer, the parties state that the respondent was, for various reasons beyond his control, unable to meet with his client to finalize the settlement issue.

The factors in mitigation offer some degree of explanation of the events surrounding the misconduct, but do little actually to mitigate the respondent's actions. For example, under Count II, the respondent should simply have moved the Court of Appeals, prior to expiration of the appellate filing deadline, for an enlargement of time during which to file the record. Although the respondent attempts to couch many of his actions in unfortunate circumstances or random but detrimental turns of events, the truth is that most, if not all, of his troubles sprang from his own poor case management and general sloppiness. His handling of the settlement proceeds in Count III was so haphazard that it is unclear whether the resultant confusion was the sole product of poor organization or whether there existed more sinister motives, although, fortunately for the respondent, the agreed facts tend to support the former conclusion. In any event, his complete mishandling of the funds in trust resulted in his retaining a contingent fee almost 40 percent beyond the agreed fee. We also note that the respondent is no stranger to this Court's disciplinary process, having been suspended for thirty days in 1994 for making a false statement to a trial court judge. *Matter of Chovanec*, 640 N.E.2d 1052 (Ind.1994). In light of all of the agreed circumstances, proffered mitigating factors and other considerations, we conclude that a lengthy period of suspension without automatic reinstatement is appropriate in this case, both to protect the public and to deter the respondent from future transgressions.

It is, therefore, ordered that the respondent, James E. Chovanec, be suspended from the practice of law for a period of not less than twelve (12) months, beginning July 1, 1998, at the conclusion of which he may petition this Court for reinstatement to the practice of law, provided he satisfies the requirements of Admis.Disc.R. 23(4) and pays the costs of this proceeding.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the Clerk.