**In the Matter of Benedict L. SAMAI**

No. 49S00–9710–DI–563

Supreme Court of Indiana.

Feb. 12, 1999

Robert W. Hammerle, Indianapolis, IN, for the Respondent

Donald R. Lundberg, Executive Secretary, Fredrick L. Rice, Staff Attorney , Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission

## DISCIPLINARY ACTION

PER CURIAM.

The Indiana Supreme Court Disciplinary Commission charged the respondent, Benedict L. Samai, with two counts of misconduct. The alleged misconduct arose from his negotiation of a settlement of a client's personal injury claim without the client's permission, his use of the settlement proceeds for his own purposes, and his lack of diligence and forthrightness in litigating another client's claim.

The parties have tendered for this Court's approval a *Statement of Circumstances and Conditional Agreement for Discipline* with respect to the charged misconduct, pursuant to Ind. Admission and Discipline Rule 23, Section 11(c). The respondent was admitted to practice law in Indiana in 1987 and, therefore, is subject to this Court's disciplinary jurisdiction.

The agreement reflects that the essential facts are undisputed. The respondent was hired to represent a client in a personal injury action arising from an automobile accident in 1995. Within two weeks after the collision, the respondent contacted Erie Insurance Company, the insurer of the other driver. The respondent also arranged a medical evaluation of his client. Immediately thereafter, the respondent lost contact with his client. His subsequent efforts to locate her were unsuccessful.

Approximately six months after the collision and without having any further contact with his client, the respondent submitted to Erie a demand for $5,000 for settlement of his client's claim. Erie responded with an offer of $2,000, which the respondent agreed to accept. The respondent executed a release of claim on behalf of the client by signing her name on the release. The client was not aware of the negotiations between Erie and the respondent and had not authorized the respondent to settle her claim.

On November 11, 1995, the respondent received from Erie a check for $2,000 made payable to the client and him. The respondent endorsed the settlement check by signing both his name and that of his client. He deposited the settlement check into his trust account on November 14, 1995. During the next 17 days, several checks were drawn against the trust account, but none were made payable to the client for whom the $2,000 settlement had been reached. The balance of the trust account fell below $2,000 during late November, and the balance at the end of that month was $733.16. His client

never received any portion of the settlement check, and none of the settlement proceeds was used to pay the doctor who treated the client.

The client contacted the respondent in March 1996 and asked that her file be forwarded to another attorney. The respondent told her that he had settled her claim for $2,000 because he had not heard from her in six months. The respondent contacted Erie and explained that his client might have medical bills beyond that which he originally contemplated. He sent Erie a cashier's check for $2,000 in an apparent attempt to nullify the settlement and renew negotiations. Erie returned the check and informed the respondent that it considered the client's case closed.

The client subsequently filed a grievance with the Disciplinary Commission. The respondent's response to the grievance filed by his counsel represented that the proceeds from the settlement check remained in the trust account from the date of deposit on November 14, 1995, through the date of the filing of respondent's response on October 26, 1996. In fact, the funds remained in the trust account no longer than 15 days beyond the date of deposit. By July 2, 1996—three months before the filing of the response—the trust account was overdrawn by $1,266.93.

With respect to Count II, the respondent represented a client who encountered mechanical problems with a vehicle two days after buying it from an Indianapolis dealership. On behalf of his client, the respondent filed in the Marion Superior Court an action against the dealership on November 18, 1994. The client attempted several times to contact the respondent between November 18, 1994 and the latter part of 1995, but the respondent failed to respond.

The dealership filed an answer to the complaint on January 18, 1995. On August 10, 1995, the trial court set the case for hearing on September 11, 1995, pursuant to Ind. Trial Rule 41(E), which provides for dismissal of a civil case for failure to prosecute. The respondent failed to appear at the hearing on September 11, and the trial court dismissed the case three days later. The respondent subsequently filed a motion to reinstate the case, alleging that he failed to appear because he neglected to note the September 11 hearing on his calendar.

Without knowing that her lawsuit had been dismissed, the client filed a grievance with the Commission on February 23, 1996, based on her inability to contact the respondent. Afterward, the respondent contacted the client to inquire as to how she wanted to proceed with her claim against the dealership. The respondent failed to inform the client that her case had been dismissed and that the motion for reinstatement had been denied. The respondent later refunded the client the money she had paid him plus interest.

The parties agree, and we hereby find, that with respect to Count I, the respondent violated Ind. Professional Conduct Rule 1.2(a) when he agreed to settle his client's personal injury claim for $2,000 without informing her or obtaining her consent.[1] He also violated Prof.Cond.R. 1.2(a) when he signed the release which waived his client's right to further recourse from Erie. The respondent violated Prof.Cond.R. 1.4(b) when he failed to consult with his client before making a settlement demand.[2] He violated Prof.Cond.R. 8.4(b) when he committed criminal acts—specifically, forgery and conversion.[3] He violated Prof.Cond.R. 8.4(c) by signing his client's name on documents and converting his client's settlement funds. He

1. Prof.Cond.R. 1.2(a) provides:

    A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter....

2. Prof.Cond.R. 1.4(b) provides:

    A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

3. Prof.Cond.R. 8.4(b) provides:

    It is professional misconduct for a lawyer to:
    ...
    (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

also violated Prof.Cond.R. 8.1(a) when he knowingly allowed his attorney to falsely represent to the Commission that the settlement proceeds remained in the respondent's trust account.

With respect to Count II, we hereby find that the respondent violated Prof.Cond.R. 1.3 by failing to take any action with respect to the lawsuit he filed on behalf of his client. He violated Prof.Cond.R. 1.4(a) by failing to keep his client reasonably informed as to the status of the lawsuit and by failing to respond to the client's contacts. The respondent also violated Prof.Cond.R. 1.4(b) by failing to explain the implications of his failure to appear at the hearing on September 11 and by failing to inform the client regarding the dismissal of her action and the subsequent denial of the motion to reinstate.

The parties agree that the appropriate sanction is an 18–month suspension from the practice of law at the conclusion of which the respondent would be required to petition this Court for reinstatement. The gravamen of the respondent's misconduct is his knowing conversion of client funds ostensibly for his own benefit. In cases concerning even an isolated instance of conversion of client funds, we generally have imposed a significant period of suspension. *See, e.g., Matter of Brooks,* 694 N.E.2d 724 (Ind.1998) (nine-month suspension without automatic reinstatement for conversion of client funds and neglect of client's case); *Matter of Chovanec,* 695 N.E.2d 95 (Ind.1998) (twelve-month suspension for trust account conversion coupled with several instances of neglect).

The respondent's misconduct is more egregious than that involved in *Matter of Brooks* and *Matter of Chovanec.* The respondent settled his client's personal injury claim without consulting her, forged her name on various documents, and then used the settlement proceeds for his own benefit within three weeks after having obtained them. The parties agree that these circumstances suggest a "selfish motive" on the respondent's part in obtaining the unauthorized settlement. When faced with a grievance arising from such actions, the respondent chose to engage in further misconduct by falsely claiming in

his response that the settlement proceeds remained in his trust account.

The respondent showed a similar lack of forthrightness with respect to the client on whose behalf he filed the lawsuit against the automobile dealership. When he contacted her after the filing of the grievance, he sought her input as to how to proceed with the lawsuit, although he knew that the case had been dismissed for his lack of diligence in litigating it.

Through his actions, the respondent has shown a general predilection to deceive clients as to the status of their cases and to represent them in a manner inconsistent with their best interests. Such actions suggest a lack of the integrity, honesty and diligence integral to the practice of law. Under these circumstances, we conclude that an 18–month suspension is appropriate.

Accordingly, it is ordered that the respondent, Benedict L. Samai, is suspended from the practice of law for a period of not less than 18 months, beginning March 15, 1999. At the conclusion of that period, he may petition this Court for reinstatement to the practice of law, provided he can demonstrate compliance with the requirements of Admis.Disc.R. 23.

The clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerk for each of the United States Bankruptcy Courts in this state with the last known address of the respondent as reflected in the records of the clerk.

Costs of this proceeding are assessed against the respondent.