**In the Matter of Donna R. HAGEDORN**

No. 82S00–9601–DI–83.

Supreme Court of Indiana.

March 10, 2000.

---

Donna R. Hagedorn, Evansville, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Charles M. Kidd, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

DISCIPLINARY ACTION

PER CURIAM.

Attorney Donna R. Hagedorn neglected the legal affairs of three clients and, in certain instances, misrepresented to them the status of their case or mismanaged funds she held in trust for them. For those acts, we find today that she should be suspended from the practice of law.

This Court appointed a hearing officer who, after conducting a hearing on the merits, concluded that the respondent engaged in misconduct. The hearing officer's report is now before us for final resolution. Since neither the respondent nor the Disciplinary Commission has challenged the hearing officer's findings, we accept and adopt them, but reserve final judgment as to misconduct and sanction. *Matter of Grimm*, 674 N.E.2d 551 (Ind. 1996). The respondent's admission to the bar of this state on May 17, 1967, confers our jurisdiction of this case.

Pursuant to Count I, we now find that a client retained the respondent some time after May 1989 to perform legal services in a post-dissolution matter. The client paid the respondent $50 to review the file and an additional $250 retainer. By July 25, 1989, the client decided to discharge the respondent due to her inactivity on the case, and sent her a letter advising her of the termination and requesting return of case file materials to which she was entitled, as well as the unused portion of the retainer. Initially, respondent did not respond to the client's requests. However, upon a chance meeting in November 1989, the respondent did finally return to the client the requested materials. To recover the retainer, however, the client was forced to file a small claims action, resulting in a judgment for the client in the sum of $100.

We find that the respondent violated Ind.Professional Conduct Rule 1.16(d) by failing to promptly return the client's file and failing, short of being compelled by

legal judgment, to refund any unearned portion of the retainer.[1]

Under Count II, we find that the respondent was appointed as guardian for an individual on January 19, 1989, and appointed representative payee for the individual's social security and supplemental security income checks. The respondent served as representative payee for the social security checks from February 1989 through approximately January 1990. She held the same status with respect to the supplemental security income checks from February 1989 through approximately May 1990.

The respondent deposited the social security checks directly into a bank savings account. The supplemental security income checks, however, were not directly deposited, but instead were cashed by the respondent. She kept the funds at her law office.

On July 25, 1991, the respondent appeared in the Vanderburgh Superior Court for a hearing on a petition to terminate the guardianship. The court found that an inventory of the estate was required by the terms of the guardianship but that it has never been filed. The court ordered the respondent to file an inventory and to prepare and file an accounting of the funds she received and spent a month-by-month basis. On December 10, 1991, the court held a show cause hearing regarding the guardianship. The court rejected the interim accounting the respondent had filed, finding that the respondent had unlawfully failed to place the social security and supplemental security income checks in a separate account. The court also found that the respondent did not maintain any formal records accounting for funds she gave directly to the ward. Additionally, the court found that the respondent had taken $500 from the guardianship fund as attorney fees without court approval. The court discovered a $2,132.56 shortage in the guardianship funds and ordered the respondent to pay that amount to the clerk, which the respondent did.

By failing to keep the guardianship funds separate from her own, the respondent violated Prof.Cond.R. 1.15(a).[2] By failing to file an inventory and accounting as ordered by the Vanderburgh Superior Court, and by helping herself to a fee from guardianship funds without court approval, the respondent violated Prof.Cond.R. 3.4(c).[3]

Under Count III, we find that in March 1988 a couple contacted the respondent about handling a private adoption. Although she was not able to assist them at that time, the respondent indicated she might be able to assist with a private adoption in the future. In March of 1989, the respondent contacted the couple, indicating she knew of a woman who was due

1. Professional Conduct Rule 1.16(d) provides: Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for the employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

2. Professional Conduct Rule 1.15(a) provides: A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation. A lawyer may deposit his or her own funds reasonably sufficient to maintain a nominal balance.

3. Professional Conduct Rule 3.4(c) provides: A lawyer shall not:

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

to deliver her child in April of 1989 and who wanted to make the child available for adoption. The respondent met with the couple and explained that they would be responsible for medical and legal expenses for the birth mother, and postpartum medical expenses for the child. The respondent indicated that her fee would be $1,200, with $500 of that due immediately. By check dated March 9, 1989 the couple paid the respondent $500. They paid an additional $500 to the respondent on April 6, 1989.

The child the couple sought to adopt was born April 21, 1989. The respondent did not prepare or file a petition for adoption. She did, however, obtain the birth mother's consent, and an order of the Vanderburgh Superior Court releasing the child to the couple's care on April 24, 1989. Before the child was released to the couple, the respondent failed to tell them that a pre-placement investigation was required, and the respondent did not arrange for such an investigation. Further, the respondent did not arrange for post-placement supervision as required by the Vanderburgh Superior Court.

As agreed, the couple, on July 19, 1989, paid to the respondent $3,001.70 for the medical expenses of the child and the birth mother. In turn, the respondent agreed to forward the bills for the child to the couple's employer for consideration of payment. Although the respondent failed to forward the bills as agreed, she did sign a personal guarantee of payment for the hospital expenses associated with the child's birth. The hospital later sued the respondent to recover these expenses, in the amount of $671.10, plus $223.70 in attorney fees. On May 14, 1991, the respondent entered into an agreed judgment with the hospital.

By the time the child was one year old, the respondent had still not filed a petition for the couple to adopt the child. On November 28, 1990, the respondent had the couple come to her office to sign a petition for adoption. The couple signed the petition, but the respondent failed to file the petition with the court. The respondent also told the couple that the birth mother's parental rights had been terminated in September 1990, when in fact respondent had no basis to believe that the parental rights of the birth mother had been terminated.

On April 21, 1991, the child's second birthday, the adoption still had not been filed. Nonetheless, the respondent informed the couple the adoption would be finalized on May 2, 1991. On May 1, 1991, the respondent informed them that finalization of the adoption would be postponed because the respondent was required to publish notice (to the putative father) of the adoption. On June 11, 1991, the respondent informed the couple that finalization of the adoption would once again be delayed, this time because the Vanderburgh County Welfare Department had allegedly lost a 1988 home study done in the couple's home. In fact, the home study was not a condition precedent to the adoption and the respondent misrepresented to the couple that the 1988 home study had been lost.

On July 1, 1991, the couple discharged the respondent as their attorney and instructed her to forward their files to another attorney. The respondent forwarded the files as requested.

By failing to arrange the required pre-placement evaluation, failing to terminate the parental rights of the birth mother and the putative father, and failing to prepare or file a petition for adoption, the respondent failed to provide competent representation in contravention of Prof.Cond.R. 1.1.[4] The respondent's actions also reflected a disregard for the clients' decisions regarding their desire to obtain a

---

4. Professional Conduct Rule 1.1 provides:
   A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

private adoption, and thus violated Prof. Cond.R. 1.2(a), which requires lawyers to abide by their clients' decisions regarding the objectives of representation.[5] By failing to begin formal adoption proceedings and thereby failing to act with reasonable diligence and promptness in representing the couple, the respondent violated Prof. Cond.R. 1.3.[6] By failing to keep the couple reasonably advised about the status of the adoption, and failing to explain the matter to the extent reasonably necessary to allow the clients to make informed decisions about the representation, she violated Prof.Cond.R. 1.4.[7] By purposefully misleading the couple about the course and status of the adoption proceedings, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Prof.Cond.R. 8.4(c).[8]

Having found misconduct, we must now determine an appropriate discipline. The Disciplinary Commission, in a memorandum on sanction, argues that the serial nature of the respondent's neglect (of both clients' legal matters and funds) and her purposeful deception of clients calls for a severe sanction.

The respondent's pattern of neglect of her clients' cases demonstrates serious shortcomings in her commitment to represent zealously their interests. *See Preamble, A Lawyer's Responsibility, Rules of Professional Conduct.* Clients were forced to take additional action to receive the services they had paid the respondent to provide, with one client even having to resort to legal action to recover from the respondent fees she had not earned. Equally disconcerting is the respondent's mishandling of a client's funds. Few other acts of misconduct impugn the integrity of the bar or place the public more at risk than an attorney's mismanagement of funds held in trust. *Matter of Brooks,* 694 N.E.2d 724 (Ind.1998). Finally, the respondent went beyond neglect into the realm of purposeful wrongful misconduct by repeatedly misleading her adoption clients as to the status of their pending case.

In similar cases of serial neglect or neglect coupled with other attendant misconduct, this Court has suspended the offending lawyers from the practice of law. *Matter of Cherry,* 658 N.E.2d 596 (Ind. 1995) (90 day suspension for neglecting to file a criminal appeal, along with misrepresenting the status of the appeal to the client); *Matter of Kelly,* 655 N.E.2d 1220 (Ind.1995) (suspension for eighteen months for four counts of neglect); *Matter of Chovanec,* 695 N.E.2d 95 (Ind.1998) (one-year suspension for serial neglect and mishandling of client funds,); *Matter of Newman,* 659 N.E.2d 1044 (Ind.1996) (three counts of misconduct coupled with mishandling of client's funds resulted in a six-month suspension without automatic reinstatement). In light of this precedent and the similar facts of this case, we conclude that the present misconduct warrants a moderate period of suspension in order to demonstrate our intolerance of the respondent's conduct and to protect the public and the profession.

5. Professional Conduct Rule 1.2(a) provides:
A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter...

6. Professional Conduct Rule 1.3 provides:
A lawyer shall act with reasonable diligence and promptness in representing a client.

7. Professional Conduct Rule 1.4 provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

8. Professional Conduct Rule 8.4(c) provides:

It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

Accordingly, the respondent, Donna R. Hagedorn, is hereby suspended from the practice of law for a period of six (6) months, beginning April 14, 2000, at the conclusion of which she shall be automatically reinstated.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.