**In the Matter of Robert L. GLASSER.**

**No. 49S00–9804–DI–243.**

Supreme Court of Indiana.

Dec. 15, 2000.

---

Jeffrey W. Mendes, Indianapolis, Indiana, Attorney for Respondent.

Donald R. Lundberg, Executive Secretary, Fredrick L. Rice, Staff Attorney, Indianapolis, Indiana, Attorney for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

### PER CURIAM.

The hearing officer appointed to hear this attorney disciplinary matter has concluded that respondent Robert L. Glasser converted his client's funds to uses unrelated to the clients, lied to them about the status of their cases and about the existence of settlements, neglected legal matters entrusted to him, and failed to cooperate during the Disciplinary Commission's investigation of his actions. The hearing officer's report is now before us for final resolution of this matter.

The respondent was admitted to practice law in this state on November 18, 1975, and is therefore subject to this Court's disciplinary jurisdiction. Effective June 24, 1999, this Court suspended him from the practice of law pending final determination in this case, pursuant to his written consent to such a suspension. Neither he nor the Disciplinary Commission has petitioned this Court for review of the hearing officer's report. That being the case, we adopt the findings contained therein, but reserve final judgment as to misconduct and sanction. *Matter of Grimm,* 674 N.E.2d 551 (Ind.1996). The verified complaint for disciplinary action underlying this case contains seven counts.

Accordingly, under Count I, we now find that on November 30, 1994, the respondent began representing a client seeking worker's compensation and social security benefits. Although the Worker's Compensation Board later directed the client's employer to resume making payments to the client, it did not approve any attorney fees to be paid from them. In May 1995, the employer's insurer issued a check for $2,024.11 to client, in the care of the respondent. Although the respondent deposited the check into his client trust account, he failed to notify his client of its receipt. After the deposit, the respondent wrote several checks against the trust account, none of which were payable to his client. By May 23, 1995, the balance of the trust account was not enough to satisfy client and third party obligations.

The client began contacting the respondent regularly about the status of the payment. The respondent failed to inform the client that he had received the check, and instead told him that it was "in the mail." The respondent eventually acknowledged that he had received the check and told the client that he had mailed him a separate check for the proper amount. That statement was untrue and the client never received a check from the respondent. The client eventually went to the respondent's office to retrieve his money. The respondent wrote the client a postdated check from his trust account for $1,519.29, which was $504.82 less than the settlement. Despite the fact that the Board had not authorized an attorney fee, the respondent told the client that he was retaining the difference as a fee.

On December 1, 1995, the respondent received a Case Readiness Order from the

Board member presiding over the case. It required the respondent to file additional documentation, or risk substantial delays in the processing of the claim. The respondent failed to comply with the order, resulting in suspension of the client's claim. The client eventually provided the required documentation. On October 28, 1996, the client fired the respondent.

Shortly after the client filed a grievance against the respondent, the respondent offered to withdraw his petition for attorney fees from the client's settlement in return for withdrawal of his grievance. On November 4, 1996, the Commission demanded that the respondent provide a response to the client's grievance. The respondent failed to provide a response.

## COUNT II

The respondent agreed to serve as successor counsel on behalf of a client regarding a worker's compensation claim. The respondent obtained the case file, which consisted of the employer's report of the client's injury and an agreement filed by the employer's insurer to provide temporary disability benefits.

In early 1990, the respondent knew the client was relying on him to file an application for adjustment of the claim, and provided his client with an adjustment application to complete. In November 1990, the client's doctor prescribed physical therapy, which the client received, paying the bill of $850. The respondent advised the client that his impairment award was $3,300, less $700 attorney fees, and told him that he would negotiate for reimbursement of the physical therapy bill. In fact, the insurer offered to settle for $2,750, but the respondent did not inform his client of the offer.

Ultimately, the respondent never filed the client's claim. The statute of limitations expired in October 1991, but the respondent failed to inform his client. From 1991 through 1993, the client called the respondent monthly to check the case's status. On occasions when the respondent returned the calls, he advised the client that he was negotiating a settlement.

In May 1993, the client agreed to accept $3,300 plus $850 reimbursement for the physical therapy, based on a bogus settlement form the respondent provided. The respondent later gave his client another settlement form, this one calling for a reduced settlement of $2,750, less attorney fees and expenses of $789. This settlement agreement, like the one before, was fabricated.

In October 1994, the respondent provided his client with a bogus settlement check for $1,961. The respondent told his client he was still negotiating the medical reimbursement, which was false. Two weeks later, the respondent again lied when he told his client that the opposing party agreed to pay $600 toward medical reimbursement and that a check would soon arrive. Ten days later, the respondent said that he had the check and that he would fax the client a copy, but never did. The client asked if he could pick up the check; the respondent told him he was still negotiating it. In late 1994, the client learned the true status of his case. The respondent later failed to provide a response to the client's grievance as demanded by the Commission.

## COUNT III

In May 1989, the respondent agreed to pursue increased worker's compensation benefits for a client, but subsequently missed the time limit for filing an application for increased benefits. The insurer later moved to dismiss the claim as untimely. On October 26, 1993, the hearing officer dismissed the claim pursuant to an order to show cause. Throughout the representation, the client frequently called the respondent to check on her case, but the respondent rarely returned her calls. The respondent did not inform her that the Board dismissed her claim. Instead, the respondent advised her that he had settled her claim for $1,800 and that he was enti-

tled to $1,400. Despite numerous attempts, the client was unable to contact the respondent again until early 1995, when the respondent again told her that he had settled her claim. In February 1995, the respondent sent her bogus settlement papers, which she signed and returned. The respondent continued to lead his client to believe a settlement was forthcoming until June 1995, even after the client filed a grievance against him. In September 1995, the client went to the respondent's office to retrieve her settlement funds. The respondent gave her two checks. The first was for $400 and the second, drawn from the respondent's client trust account, was for $1,000. The respondent asked the client to hold the second check for one week until there was enough money in the trust account to cover it. She tried to cash the second check that day, but was told that the respondent's trust account contained insufficient funds. That same day, the respondent deposited $600 from his general account into his trust account.[1]

In responding to the Commission after the client's grievance, the respondent claimed that his representation of the client was limited by her inability to pay for documentation necessary to prove her case. He also responded: "Thus, with [the client's] understanding and approval, and at her specific request, I entered into negotiations and her claim was ultimately settled to her satisfaction."

On May 7, 1996, Commission investigators[2] requested copies of the settlement checks and specific correspondence, but the respondent failed to comply. In December 1996 and again in October and November 1997, the Commission subpoenaed copies of the settlement checks and accompanying financial records from the respondent. The respondent claimed he did not have the materials.

## COUNT IV

In August 1989, a client hired the respondent to appeal a denial of Social Security disability benefits. In September 1992, the respondent notified his client of an appointment for a medical examination. After that, he did not contact her until March 1995, when he sent her a case update form referring to enclosures she needed to complete. In 1995 and 1996, the respondent informed the client that he would contact her when he heard anything about her appeal. The respondent also sent her copies of three letters he sent the Social Security Administration in the summer of 1996 requesting to review her file.

In September 1996, the client visited the Social Security office and discovered that the agency had no record of her appeal on file.

## COUNT V

The respondent settled a worker's compensation case for $2,087 on behalf of a client and deposited the settlement check into his attorney trust account. That day, he issued a $517.40 check to himself from his trust account for attorney fees. He then sent his client a check for $200.24, designating it as "full and final" payment. He provided his client with no written accounting explaining the amount retained or detailing disbursements.

Thereafter, the respondent should have had at least $1,569.60 in his trust account to satisfy client obligations, but the balance in the trust account eventually fell to $21.88. The disposition of the net amount of the remaining settlement proceeds (less payment of one $200 medical bill) was

---

1. The respondent previously made other, similar transfers. For example, on August 15, 1995, he deposited a check for $550 from his general account into his trust account. On August 4, 10, and 28, he deposited his own traveler's checks in the amounts of $1,300, $1,000, and $700 into his trust account.

2. The Indianapolis Bar Association initially investigated the grievance on behalf of the Disciplinary Commission.

never explained to the client. Several times the client requested an accounting of the settlement of her worker's compensation case. The respondent never responded.

The Commission twice demanded a response from the respondent to the client's grievance, but the respondent failed to comply.

### COUNT VI

In early 1995, a client hired the respondent to represent her in a worker's compensation matter. On May 13, 1997, the respondent informed her that he had settled her case for $3,000, and provided her a check drawn on his attorney trust account for $2,221. On May 19, 1997, the respondent issued a check to himself drawn on his trust account for $500 for "partial payment" of his attorney fees. In fact, there had been no settlement of the case.

On October 6, 1997, the respondent did in fact settle the case for $4,500, and on October 13,1997, he had the client sign a settlement agreement. The respondent falsely told the client that this settlement covered the original $3,000 of May 1997 plus an additional $1,500 he was able to get when he subsequently reopened the settlement negotiations.

On November 21, 1997, the respondent deposited the $4,500 settlement check into his attorney trust account. The respondent did not inform the client that he had received the settlement check, or that he had deposited it into his trust account. That day, the respondent wrote a check from his trust account to himself in the amount of $2,221 as reimbursement for the amount he provided to his client on May 13, 1997.

Between November 1997 and April 1998, the client on several occasions requested an accounting of the proceeds from the settlement. The respondent failed to oblige. The respondent should have been holding at least $1,279 from the settlement

in trust, but on December 29, 1997, the balance of the respondent's trust account was $471.51, and by February 25, 1998, it fell to $45.44. An unpaid third party bill that the client noticed had not been paid by August 1997 remained unpaid for approximately one year, despite the client's requests that the respondent pay the bill.

On April 7, June 3, and June 12, 1998, the respondent issued checks to the client drawn on his trust account totaling $888.28. The respondent never provided an accounting or final disbursement statement to the client. The respondent never paid to the client approximately $79.48 of settlement proceeds to which she was entitled. Since the client filed her grievance against the respondent, he has twice failed to comply with the Commission's demands for information.

### COUNT VII

In November 1997, the respondent settled a client's worker's compensation case for $9,500, paid by two checks which the respondent deposited into his client trust account. Thereafter, he disbursed, *inter alia*, a partial distribution to the client and a $1,750 payment to himself for attorney fees. After the distributions, the respondent should have been holding at least $6,000 of the proceeds for obligations of his client and third parties.

On December 4, 1997, the respondent withdrew $3,950 from his trust for himself, reducing its balance to $5,203.74. On February 18, 1998, when the respondent made the final distribution of the proceeds, he had disbursed all but $250 of the settlement proceeds. This amount was the balance of the respondent's attorney fee, which he allowed to remain in his trust account. The respondent later failed to respond to the Commission's demand for a response to the client's grievance.

By deceiving his clients as to the status of their cases and the existence of settlements, the respondent engaged in conduct involving dishonesty, fraud, deceit, and

misrepresentation, in violation of Ind.Professional Conduct Rule 8.4(c). By converting client funds to uses unrelated to the clients, the respondent violated Prof. Cond.R. 8.4(b), which prohibits lawyers from engaging in criminal acts that reflect adversely on their honesty, trustworthiness, or fitness as lawyers in other respects. By attempting to persuade a client to "withdraw" a grievance against the respondent by offering to forgo a legal fee, the respondent engaged in conduct prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(c). By failing to respond to the Commission's demand for responses to client's grievances, the respondent violated Prof.Cond.R. 8.1(b). He engaged in fraudulent and deceitful conduct in violation of Prof.Cond.R. 8.4(c) by telling the Commission that he had negotiated a settlement on behalf of a client when in fact he had not.

By allowing clients' causes of action to expire due to the passing of statutes of limitation, the respondent failed to act with reasonable promptness and diligence in violation of Prof.Cond.R. 1.3. By failing to advise his clients of such circumstances, and by generally failing to respond to their requests for information about their cases, the respondent failed to keep them adequately informed to the extent needed to permit them to make informed decisions regarding the representations, in violation of Prof.Cond.R. 1.4. In Counts V and VI, by not providing his clients with written statements showing the method of determination of his contingent fee, the respondent violated Prof.Cond.R. 1.5(c). By failing to abide by the case readiness order in Count I, the respondent failed to abide by the obligations of a tribunal in violation of Prof.Cond.R. 3.4(c).

Professional Conduct Rule 1.15(a) provides that lawyers shall keep their own property separate from property they hold for clients in connection with representations. By depositing his own funds into his client trust account, and by failing to withdraw his own earned fees from the account, the respondent violated the rule. Rule 1.15(b) provides that after receiving property to which clients are third parties are entitled, lawyers shall promptly deliver the property to them. The respondent failed to do so on several occasions and therefore violated the rule.

Having found misconduct, we now turn to the issue of proper sanction. In so doing, we note factors in aggravation and mitigation. The hearing officer found several factors which aggravate the respondent's misconduct. The respondent made no effort at the hearing of this matter to express any remorse for his misconduct, even though several of the persons harmed by his misconduct were present at the hearing. His actions reflect a pattern of misconduct involving multiple offenses. He repeatedly misappropriated and misused client funds and often lied to clients to cover-up what he was doing, reflecting self-serving and dishonest motives. His acts demonstrate a lack of honesty and integrity critical to the ethical practice of law.

The hearing officer found no factors in mitigation. She recommends disbarment.

We agree with the hearing officer's assessment that the respondent's acts indicate consistent dishonesty and untrustworthiness in dealings with clients. His disregard for the Commission also evidences behavior incompatible with the privilege of holding a license to practice law. Accordingly, we find that the hearing officer's recommendation should be approved.

It is, therefore, ordered that the respondent, Robert L. Glasser, is hereby disbarred. The Clerk of this Court is directed to strike his name from the Roll of Attorneys.

The Clerk of this Court is further directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States

District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.

SHEPARD, C.J., and DICKSON, SULLIVAN, BOEHM, JJ., concur.

RUCKER, J., dissents, and would suspend for three years, believing that disbarment is not consistent with precedent.